82 11
21a 442

82 11
34a 605

82 11
165 23

## CENTRAL GRAND DIVISION.

### JANUARY TERM, 1876.

## Otto Brauns, use, etc.

### *v.*

## The Town of Peoria.

1. COMMISSIONERS OF HIGHWAYS—*power to bind town.* The commissioners of highways can not bind their towns by any contract, or exercise any other powers not conferred on them by statute.

2. SAME—*sources of revenue.* The moneys paid for fines and commutation of road labor, a poll tax of not exceeding $2, and the road tax authorized, are all the sources of revenue to which the commissioners of highways can resort for means to keep roads and bridges in repair.

3. SAME—*limit in expenditures.* Under the road law of 1872, the commissioners of highways have no authority conferred upon them to expend money on roads and bridges, in their towns or districts, which is not in the treasury to be expended, or which is not actually provided for by a levy. They can not anticipate a tax to be afterwards levied, and the annual revenue of each year must be devoted to the wants of that year.

4. SAME—*contracts with themselves.* It seems a contract made by two highway commissioners with themselves for repairing roads and bridges, where the cost exceeds $25, is illegal, and in violation of the statute. Where the cost exceeds that sum, the law requires the contract to be let to the lowest responsible bidder, after public notice.

APPEAL from the Circuit Court of Peoria county; the Hon. J. W. COCHRAN, Judge, presiding.

Messrs. SLOAN, LYDECKER & COCHRAN, for the appellant.

Mr. L. HARMON, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was *assumpsit*, in the Peoria circuit court, by Otto Brauns, plaintiff, against the town of Peoria, for work, labor and services performed and bestowed; for materials provided; for money lent and advanced; for money paid, laid out and expended; for money had and received; for money due for interest on divers sums of money; for money due on an account stated, and for money found due by the board of town auditors to the plaintiff, on settlement.

Issues were made up on the pleas of *non assumpsit* and payment, and tried by a jury, who returned a verdict for the defendant, on which the court rendered judgment, after denying a motion for a new trial. Plaintiff appeals.

There are some points of practice raised on the record, which it is not necessary to notice, as they were of a character addressing themselves to the discretion of the court, under the then circumstances.

It appears appellant was a highway commissioner of the town of Peoria, elected on November 2, 1870. His associates were Thomas Honnihan and Peter Reed. They, with appellant, composed the board of highway commissioners for Peoria township. This board, at a meeting held in April, 1871, elected appellant treasurer, who continued to act as such until April, 1873.

Previous to this last date, and during the years 1871 and 1872, it would appear that appellant, with the concurrence of his co-commissioner, Honnihan, made contracts for work to be done on the roads in Peoria township, and appellant did work upon them himself, or by means employed by him. In his judgment, such work was deemed necessary, there having been

heavy rains, seriously injuring the roads and bridges. There being no money in the treasury, appellant furnished a team and hired a man to do the work, and his account was allowed by the town auditors, to the extent of seventeen hundred dollars.

The controversy brings before us the question as to the extent of the powers of highway commissioners, and when and how to be exercised. The statute must answer the question.

It will be conceded it was not in the power of appellant to bind the town outside of any authority conferred upon him to bind it.

The question then arises, was the work done by appellant, and for which this action was brought, within any authority conferred on him by law.

Under our system, in counties under township organization, as is Peoria county, the whole subject of roads and bridges is committed to the towns, and to officers elected by the voters of the several towns. Their guide, and their only guide, in the performance of their duties, is the statute, and the only powers they can exercise must be conferred by law.

Before citing the portions of the statute applicable to this investigation, it will be stated that, for the purpose of doing the work on the roads and bridges, and to pay for the same, appellant borrowed the money of one Davis and Hoyne, for whose use this action is brought, and to whom, when the board of town auditors made the above allowance, appellant gave an order for the amount.

To state briefly the claim of appellant, it is, that, having expended money in repairing the roads and bridges in the town of Peoria, and the amount thereof having been allowed by the board of town auditors, the town is not at liberty to plead a want of power on the part of the board of highway commissioners to create a debt by doing work and spending money in excess of the road fund then in the treasury, but the same must be paid as a lawful town charge.

Against this claim, the town of Peoria insists that, by unlawful proceedings, the highway commissioners had used all the revenue which came to their hands, for road and bridge purposes, designed to be used during the year beginning April, 1872, and ending April, 1873, and finding, early in August, 1872, no money was on hand, they commenced to draw on the revenue to be collected as a road and bridge fund for 1873, and undertook work, which they let to themselves, with no money to pay for it, and that this action by appellant is an attempt to collect from the town payment for this work, or, rather, to reimburse him for moneys he claims to have advanced therefor.

As we have said, this claim of appellant must be tested by the statute creating the office of highway commissioners and conferring their power.

The act in force at the time of these transactions was the act entitled "An act in regard to roads and bridges," approved April 10, 1872. Sess. Laws 1872, p. 675.

We have carefully examined that act, and find ample provision made for carrying out its objects.

By section 27 each commissioner is required, before he enters upon the duties of his office, to take and subscribe, before some justice of the peace, the official oath prescribed by the constitution of the State, to be filed with the town clerk.

By section 29 they have power to enter into contracts in all matters within their jurisdiction, but all suits concerning highways shall be in the name of the town.

By section 31 they shall choose one of their number treasurer, who shall receive and have charge of all moneys raised in the town or road district for the support and maintenance of roads and bridges; shall hold such moneys at all times subject to the order of the commissioners of highways, and shall pay them over upon their order, or on the order of a majority of the commissioners, and not otherwise; shall execute bond conditioned for the faithful discharge of his duties as such treasurer, etc., and for his services is allowed to retain two per

centum on all moneys he shall receive and pay out, except such moneys as are paid over by him to his successor in office.

Section 32 contains twelve specifications of their duties, after entering upon them, the care and superintendence of the highways and bridges in their towns and road districts, among which duties is that to collect all fines and commutation money, to assess and collect the poll tax, to assess annually upon the real and personal property in their respective towns and road districts a tax not exceeding fifty cents on a hundred dollars assessed valuation by the last county assessment.

Section 33 provides for rendering their account, in writing, to the board of town auditors, at the annual meeting for auditing the accounts of town officers, stating the amount of real and personal property tax received by them; the sums received on account of poll tax; all sums received for fines and commutations, and the amount received by them from all other sources; the amount expended by them for all purposes, specifying by items the date, purpose and amount of such expenditure, and to whom paid; the names of all persons assessed for poll tax; the names of all persons who have paid or worked out their poll tax; the names of all persons who have been fined, and the sums, and what fines remain unpaid.

These are all the sources of revenue to which the highway commissioners can resort for means to keep the roads and bridges in their several districts in repair. Section 42 provides, that the highway commissioners of each town and road district shall, annually, ascertain, as near as practicable, how much money must be raised by tax on real and personal property for highway purposes during the ensuing year; and they shall, in counties under township organization, give to the supervisor of the township   *   *   *   a statement of the amount necessary to be raised, signed by a majority of the commissioners, on or before the Tuesday next preceding the annual September meeting of the board of supervisors, who shall cause the same to be submitted to the board for their action, at the September meeting. Section 43 provides, that, in pursuance of the amount so certified, the county clerk, when

making out the tax books of State and county taxes for the collector, shall extend the necessary tax in a separate column against each tax-payer's name, or taxable property, as other taxes are extended, which shall be collected the same as State and county taxes. And it is made the duty, by section 44, of the county clerk, to make out and deliver, on demand, to the treasurer of the commissioners of highways, a certificate of the aggregate amount of tax so levied and placed on the tax books, which tax, when collected, shall be paid to the treasurer of the highway commissioners by the collector or sheriff, as fast as the same is collected. Section 46 provides for levying a poll tax of two dollars for highway purposes.

There is ample provision made, by section 41, for raising a larger sum of money than can be produced by the poll tax and the tax to be assessed on real and personal property, and that is, by the commissioners of highways, or any three legal voters, giving notice by posting notices in three of the most public places in the town or road district at least ten days before the annual meeting, that a larger amount of money will be required for the purpose of constructing or repairing roads and bridges; the legal voters present at such meeting may authorize an additional amount to be raised by tax, not exceeding sixty cents on each one hundred dollars' valuation. This vote, or the result of it, is to be certified and returned to the proper authorities.

The repair of roads and bridges being committed to the highway commissioners, ample means are provided to enable them to discharge all their duties.

We do not find, in the very many provisions of the statute respecting roads and bridges, any authority conferred upon the highway commissioners to expend money on the roads and bridges within their respective districts which is not in their treasury to be expended, and which had not been actually levied, nor is there any authority conferred upon them to anticipate revenue and expend it, unless the same be actually levied. *Highway Com'rs* v. *Newell*, 80 Ill. 587. It seems to be the policy of the law, and a very just one, that the accruing reve-

nues of the year shall be appropriated to the wants of the year, and that no expenses should be incurred in the absence of money already levied to meet them. The practice, we know, is different, tending to much confusion and embarrassment. The true principle is, and should be, to deny to public functionaries the power to expend money in anticipation of receipts, except in cases where an actual levy has been made.

It would appear, in this case, that appellant and his co-commissioner Honnihan, without consultation with Mr. Reed, the other commissioner, were in the constant practice, when they deemed the roads and bridges out of repair in their quite limited district, to employ themselves, at their own prices, to make the repairs, and allow their charges. It is stated, and not controverted, that their road district embraced but five roads outside of the limits of the city of Peoria—the combined length of them not exceeding five miles. For the ordinary annual repair of these roads and bridges there came to their hands, from the proper public sources, the sum of four thousand and eighty dollars. Their account, as presented to the town auditors for adjustment, shows a total expenditure for one year on these roads of eight thousand and eighty dollars, a part of which is the claim now in suit, the money constituting it having been borrowed by appellant of the bankers, Davis and Hoyne.

We find no authority in the law to justify this, and can not understand the principle on which the claim is sought to be sustained.

Appellant has failed to convince us of the legality of the claim advanced, but insists, the town auditors having adjusted the claim, that adjustment is conclusive, and constitutes it a town charge.

We presume the adjustment insisted upon by appellant is that of May 3, 1873. That record shows, a member of the board, Mr. Sweet, moved " that the board recommends that the amount shown to be due to the treasurer of the highway commissioners (appellant) on April 16, to-wit: one thousand seven hundred dollars and ninety-seven cents, be paid to Davis

and Hoyne, as per order of the late treasurer, Otto Brauns. Motion prevailed."

Although this record was excluded as evidence, on defendant's motion, yet the witness Forsythe, the town clerk, verified it by his testimony, and it fails to show any allowance in favor of this appellant. It simply recommends that payment be made to Davis and Hoyne of seventeen hundred dollars and ninety-seven cents. If it amounts to anything, it might, with more propriety, be claimed as an allowance in favor of these persons, to recover which, of the town, they should be plaintiffs in the action.

It is said by appellant, he had the right, with the concurrence of his co-commissioner Honnihan, without consultation with Reed, to make contracts for repairs between themselves, and audit their own accounts, and appellant, as treasurer, pay them. The abuses to which such a practice might lead are hardly conceivable, and the practice itself is unwarrantable. Certainly the statute gives no countenance to it.

Section 84 of the statute points out the mode by which contracts shall be made for the repairs on roads and bridges, which is, by public letting, to the lowest responsible bidder; upon proper notice given ten days before the time of letting; if the probable cost will not exceed twenty-five dollars, they may privately contract with persons, as they shall deem best. This statute was wholly disregarded, appellant, with his colleague, preferring to contract privately with themselves beyond the limit of twenty-five dollars, and without the knowledge of their fellow-commissioner Reed, and without authority of law.

It is unnecessary, with the views here expressed, to enter into a critical examination of the instructions. In any view which can be taken of the testimony in this record, appellant could not recover, and though some of the instructions may be faulty, yet, believing justice has been done, we will not disturb the judgment. This is the doctrine of this court, frequently announced. *Peoria Marine and Fire Insurance Co.* v. *Frost*, 37 Ill. 333.

We are satisfied appellant has no right to recover of the town on the claim presented, and affirm the judgment of the circuit court.

*Judgment affirmed.*