# THE CITY OF EAST ST. LOUIS

## v.

## ALEXANDER FLANNIGEN ET AL.

*Municipal Corporations—Action on Treasurer's Bond—Misapplication of City Funds—Powers of Council—Requirement of Law—Pleading—Estoppel—General and Special Demurrer.*

1. A plea in estoppel must have a formal commencement and conclusion to mark its special character; their absence can be reached by general demurrer.

2. A plea in estoppel must aver that the new matter in the plea will be relied on as an estoppel, and it must be so pleaded.

3. A plea which purports to answer the whole declaration, but answers it in part only, is demurrable.

4. Money must be paid out of the city treasury as the law directs; payments in any other way can neither be directed nor ratified by the city council.

5. Such payments must be confined to the purposes intended by the appropriation, until its requirements are met; but a surplus may be applied by the council to any debt due by the city.

[Opinion filed February 26, 1890.]

APPEAL from the Circuit Court of St. Clair County; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. F. G. COCKRELL, for appellant.

Messrs. T. W. HUTCHINSON and WILDERMAN & HAMILL, for appellees.

REEVES, J. The city of East St. Louis brought this suit against Alexander Flannigen and the other appellees, on his bond as treasurer of said city. The declaration avers the appointment of Flannigen as treasurer, on the 20th day of April, 1886, and the execution of the bond sued on. The declaration sets forth the ordinance of said city defining the duties of the treasurer, and alleges that on the 31st day of August, 1886, the city council passed its annual appropriation ordinance, by which the sum of $113,056 was appropriated to be applied as follows:

| | |
|---|---:|
| For streets and alleys | $30,000 |
| " supplying water to the city | 11,352 |
| " lighting the streets | 7,500 |
| " officers' salaries | 8,000 |
| " printing and stationery | 500 |
| " police | 16,000 |
| " elections | 500 |
| " extending, laying and maintaining sewer | 11,352 |
| " costs of litigation | 1,000 |
| " repairs of public buildings | 1,000 |
| " contingent expenses not included above | 4,000 |
| " payment of interest as authorized by Sec. 22, of Art. 7, City Charter | 11,352 |
| | $102,556 |

Brought forward.............................$102,556
For expenses of city court..................　3,500
　" fire apparatus...........................　7,000

　　　　Total...............................$113,056

On the 14th day of September, 1886, the city council passed an ordinance for the annual tax levy of $64,129, which amount was declared to be to defray the expenses of said city for the year 1886, as provided by the appropriation ordinance for the fiscal year beginning July 1, 1886, as follows, to-wit:

For streets and alleys........................$　8,000.00
　" lighting streets..........................　7,500.00
　" supplying water to city...................　7,500.00
　" officers' salaries.........................　2,000.00
　" printing and stationery..................　　300.00
　" police...................................　9,000.00
　" elections................................　　125.00
　" extending, laying and maintaining sewers....　11,352.00
　" costs of litigation.......................　1,000.00
　" repairs on public buildings...............　1,000.00
　" contingent expenses not included in the above　1,000.00
　" payment of interest as authorized by Sec. 22,
　　　Art. 7, City Charter.....................　11,352.00
　" expenses of city court...................　2,000.00
　" fire apparatus...........................　2,000.00

　　　　Total................................$64,129.00

Being the amount necessary to be raised by taxation after deducting cash on hand and revenue from other sources.

The declaration further avers that there came into the hands of said Flannigen, as treasurer of the funds belonging to fiscal year 1885, the sum of $28,494.74, and afterward at divers times between July 1, 1886, and April 14, 1887, there came into his hands of the funds of said city for the fiscal year 1886, the following sums, to-wit:

From licenses...............................$60,000.00
　" tax levy................................　15,498.40
　" Mayor Joyce............................　　30.00

　　　　Total................................$75,528.40

All of which, except the sum of $20,000, came into his hands after the adoption of the appropriation ordinance aforesaid, and was subject to the classification and distribution by said ordinance provided, and that it was the duty of said treasurer to so classify and distribute the same. The declaration further avers that during each of the years 1885 and 1886, the city of East St. Louis was indebted beyond the constitutional limit of five per cent of the assessed value of all the taxable property within said city, and said city was required by law to devote the revenues of each fiscal year to the expenditures of that year, and that during each of the fiscal years 1885 and 1886 warrants were issued by authority of the city council on claims accruing during said years respectively, against each of the several funds in said appropriation ordinance designated, to the full amount thereof, and so plaintiff avers that said treasurer could not legally pay out the moneys coming into his hands for the fiscal year 1886, upon warrants drawn against the funds of previous fiscal years. It is then set forth that during the fiscal year 1886, there were warrants duly authorized by the city council and duly issued against the said several funds of the revenue of 1886, which were issued during the term of office of said Flannigen, and of which he, as treasurer, had notice, and which are still outstanding and unpaid, to the amount of $32,000, and that said Flannigen received and held funds subject to the payment of said warrants, sufficient to pay them and all other like warrants, but that Flannigen neglected and refused to pay said warrants or to turn over the funds applicable to their payment to his successor in office.

Four breaches were assigned.

First. That Flannigen did not classify and distribute the moneys coming into his hands as treasurer for the fiscal year 1886, as required by the appropriation and tax levy ordinances, whereby the city suffered $5,000 damages.

Second. That Flannigen did not pay over to his successor the moneys remaining in his hands at the expiration of his term of office, and wrongfully converted same to his own use, to the damage of the city in the sum of $25,000.

Third. That said Flannigen, out of the moneys received by him as treasurer, wrongfully misappropriated and paid out as follows: On orders drawn against tax levies of prior fiscal years, 1880, 1881, 1882, 1883 and 1884, the sum of $20,000, the same not being a charge against the funds in his hands nor a charge against said city, for the reason that said city was indebted beyond the constitutional limit, whereby the city suffered $20,000 damages.

Fourth. That Flannigen, out of the moneys so received by him for the fiscal year 1886, wrongfully paid out and misappropriated in the month of March, 1887, on a judgment rendered against the city in 1878, the sum of $2,775.88, and also out of the street and alley fund for 1886 paid to one H. D. O'Brien on an order drawn against the printing fund, the sum of $4,294.42, which order the said Flannigen well knew was fraudulent, illegal and void for the reason that said order was not signed by the mayor, the mayor having refused to sign it, the same being for a supposed service rendered the Bowman government more than seven years prior to its payment, and that in fact no service was ever rendered by said O'Brien for said city, and that Flannigen paid other judgments and claims out of the funds of the fiscal year 1886 which were not a charge against said funds and could not legally be paid out of the funds of the year 1886, amounting in all to the sum of $10,000, whereby the plaintiff suffered $10,000 damages.

Nineteen pleas were filed by defendants. The 1st, 2d, 3d and 4th were to the first breach; the 5th, 6th and 7th were to the second breach; the 8th, 9th, 10th, 11th and 12th were to the third breach; the 13th, 14th and 15th were to the fourth breach; the 16th, 17th and 18th to the declaration, and the 19th plea to the third and fourth breaches.

To the 1st, 6th, 8th, 9th, 10th, 11th, 13th, 14th, 16th, 17th and 19th pleas a demurrer was interposed and to the remaining pleas replications were filed. The demurrer to the pleas named was overruled, and plaintiff stood by its demurrer, and as the 16th and 17th pleas purported to answer the whole declaration there was judgment on demurrer for defendants, from which this appeal is prosecuted. The errors assigned

are that the Circuit Court erred in overruling the demurrer to pleas, in rendering judgment for defendants and in not sustaining the demurrer to pleas. So it will be seen that the question presented for our consideration is whether the court properly overruled the demurrer to the several pleas named above. The first plea is to the first breach herein before set forth, and is in substance that the defendant Flannigen, as treasurer, on the 13th day of April, 1887, made full and complete report, and submitted the same to the city council, showing the moneys received by him as such treasurer and the disbursement thereof, and the city council with full knowledge of all the facts, then and there approved said report and confirmed and ratified the disbursements made by him as treasurer, and then and there approved of the manner in which said Flannigen had kept the account of said city, and this the defendants are ready to verify, etc. It would seem, if this plea can be sustained at all, it must be as a plea of estoppel.

A plea in estoppel neither denies the allegations of the opposite party as in a plea of traverse, nor admits them as in a plea of confession and avoidance, but alleges some new matter which precludes the opposite party from making the allegations contained in his declaration. Steph. Pl., 219, 220; Gould Pl., 39 to 42. This plea is recognized as a distinct plea to the action, and is not, technically speaking, a plea in bar, which must either deny or admit and avoid the allegations of the declaration (1 Chitty, 551); but as it is a plea to the action it is usually spoken of as a plea in bar. Without denying any of the facts alleged in the breach, it avers that with full knowledge of all the facts as to the manner in which Flannigen kept his books as treasurer and as to how he had paid out the moneys referred to in this breach, the city council approved and ratified what had been done, and the legal principle underlying the defense claimed is, that with such full knowledge of all the facts the city, by its council, ratified and approved what had been done and is now estopped from alleging that these payments were not properly and legally made. As a plea of estoppel it is defective in form and sub-

stance.   This plea, without confessing or denying the matter
of fact adversely alleged, relies merely on some matter of
estoppel as ground for excluding the opposite party from the
allegation of fact.   Like pleadings in abatement this plea has a
formal *commencement and conclusion* to mark its special
character and quality and to distinguish it from an ordinary
plea in bar.   Stephens on Pleading, 219 and 220.   It would
seem at common law, this defect of want of formal commence-
ment and conclusion of the plea could be reached by a general
demurrer, and this rule was not changed until the statute of
4 and 5 Anne, which is not in force in this State.

But if we concede that under our statute and practice this
defect could only be reached by special demurrer, there is
another defect in this plea which may be reached by general
demurrer.   It is a necessary averment in a plea of estoppel
that the new matter in the plea shall be relied on as estoppel
and so pleaded.   Co. Litt., 303 b, Com. Dig.—Pleader E. 31;
Estoppel E.; 1 Saund. 325 a, note (4); Shelly v. Wright, Willis,
13; Steph. Pl., 2d Ed. 443.   As has been seen, this is not a plea
of discharge, for that is a plea of confession and avoidance.

The 6th plea is to the second breach and is in substance
as follows : Sets forth report by defendant Flannigen as treas-
urer, to the city council, of moneys received and disbursed
by him for the city, and the council approved the report
and he paid over balance shown by the report to his suc-
cessor.   It is difficult to see upon what principle this plea
could be held to be a sufficient answer to the second breach,
the serious charge in which is that the defendant had converted
$25,000 of city funds to his own use and the demurrer to it
should have been sustained.

The 8th plea is to the third breach and in substance is
as follows :  The defendants say said orders or warrants were
paid by direction of the city council.   What was said of the
first plea which was to the first breach assigned, is applicable
to this plea.   It could only be available as a plea of estoppel.
The plea does not deny the allegation of the breach, that
these orders were wrongfully and illegally paid.   The plea in
law, if it has any force, is that plaintiff directed these orders

City of East St. Louis v. Flannigen.

to be paid by the treasurer and now it is estopped from alleging that such payments were illegal.   But as we have seen it is defective as a plea of estoppel.   For the same reason the demurrer should have been sustained to the 9th, 10th, 11th, 13th, 14th and 16th pleas.   The 17th plea purports to answer the whole declaration but simply avers that he paid over the balance in his hands to his successor and did not convert to his own use any money of the city.   It would have been a good plea to second breach, but did not answer the whole declaration and the demurrer to it should have been sustained.

The 19th plea is as follows :   "And for plea to the third and fourth breaches in said declaration the defendants say that there came into the treasury of said city of the revenues of said fiscal year, 1886, a sufficient sum of money to pay the said judgments, claims and warrants in said breaches mentioned and all liabilities contracted and incurred by said city during the said fiscal year against the appropriations in said appropriation ordinance set forth, leaving after said payments made and to be made upon warrants drawn and to be drawn against the revenues of said fiscal year, a surplus in the treasury of said city for said fiscal year, and the payments of said claims and warrants in said breaches alleged were duly reported by said Flannigen, as treasurer of said city, to the city council of said city, and said city council duly approved of and ratified said payments and each of them, and this the defendants are ready to verify."   We do not see, if there was such surplus as is alleged in this plea, but that the city council might apply such surplus to the payment of any debts of the municipality, as will be stated more fully later on; but this plea does not say that the city council gave such direction and that by virtue of said direction these payments were made; but it would be properly inferred from the plea that the treasurer made such payments without any such direction from the city council, and relied upon a subsequent ratification by the council of his acts in making such payments.   It must, we think, be conceded that the treasurer could only legally make the payments referred to by the authority of the city council, and such payments without such authority would

be illegal. It should further be observed that the fourth breach avers that the payment to O'Brien was made without an order or warrant signed by the mayor, and which the mayor had refused to sign, and that this claim was a fraudulent claim and known to be such by Flannigen when he paid it. Certainly there is nothing in this plea that in any way answers this averment. So far as the ratification by the city council would in any view avail the defense, it could only avail as an estoppel as we have already seen, and as such plea, this is defective in form and substance. Had this plea contained, in addition to what is stated in it, a denial of the fraudulent character of the O'Brien claim, or an averment that the claim had been duly allowed by the city council, and a warrant issued and signed directing its payment, and the plea had been so framed that as to the other payments it would be in proper form as a plea of estoppel, we do not see but what it would be a good plea. As it stands the demurrer should have been sustained to it.

The meritorious question arising upon these pleadings may be stated thus: Assuming that the facts set up in the several pleas as to the report by the treasurer, to the city council, of his acts and doings, and the council's approval of the same, were properly pleaded, would this constitute a defense to a charge of a diversion of funds belonging to the fiscal year 1886, and their application to the payment of the debts of other years, where the municipality is indebted beyond the constitutional limit, and when all the current revenue is required to meet current expenses?

It would seem, if the law fixes the manner in which the money that comes into the city treasury shall be paid out, that mode of payment is the only legal method of payment. The city council certainly has no power to direct an illegal thing to be done or to ratify it when done. If the defendant Flannigen, as city treasurer, made payments that were illegal, it is no defense to say the city council directed it, or ratified it after it was done.

Now, what does the law require as to payments from the revenues of any fiscal year? We think it must be conceded

from the authorities that such payments must be confined to the purposes for which they were appropriated or intended; or at least until all such requirements are met.   Commissioners of Highways v. Newell, 80 Ill. 588; Brauns v. Town of Peoria, 82 Ill. 11; People ex rel. v. City of Cairo, 50 Ill. 154; Fuller v. Heath, 89 Ill. 296; Zebly v. East St. Louis, 110 U. S. 321.

If the warrants of 1880, 1881, 1882, 1883 and 1884 were not paid out of the revenues of 1886, or if paid out of such revenues, such payments left a sufficient amount of such revenues to pay all warrants drawn and to be drawn against such revenues, this would meet the allegation of the third breach that these warrants were wrongfully paid.   If the revenues of 1886 were sufficient to meet all the warrants drawn and to be drawn against that revenue and leave a surplus, it would seem that the city council might lawfully apply that surplus to any debt owing by the city.   Then, again, it appears that the defendant Flannigen received from the funds belonging to the revenue of the fiscal year 1885, the sum of $28,494.74. This he might apply, first, of course, to the warrants drawn against that fund, and the surplus, if any, the council could direct to be applied to payment of any debt owing by the city.

There is no plea, except the 19th, that attempts to make the defense that there was a surplus of the revenues of 1886, after paying all the current expenses of that year, for which appropriations were made, while the declaration avers that there remains unpaid of the warrants ordered against the revenues of 1886, some $32,000.   The judgment of the Circuit Court is reversed and the cause remanded, with directions to said court to sustain the demurrer to the 1st, 6th, 8th, 9th, 10th, 11th, 13th, 14th, 16th, 17th and 19th pleas, with leave to appellees to amend same and file additional pleas, if they shall be so advised by their counsel.

*Reversed and remanded.*