## Klauder et al. v. Cox et al.

*Municipalities—Taxpayer's suit—Parties—Demand on proper officers to bring suit—Duplicity—Parties.*

1. A taxpayer, whose right is common with all taxpayers, has no standing at law to prosecute an action of *assumpsit* for the benefit of the city, even if it be assumed that the defendants in the suit are personally liable for the alleged wrongful appropriations of public moneys.

2. Even in cases where a taxpayer may bring a suit which the municipal authorities should in the first instance prosecute, he must make a demand upon such municipal officers as can lawfully authorize and direct such a suit to be brought; the city solicitor is not such an officer.

3. A suit brought by a taxpayer for alleged misappropriations of public moneys is void for duplicity where the defendants were members of two distinct and separate councils and the alleged misappropriations made in two different years by such distinct councils.

*Municipalities—Public officers—Personal responsibility—When officers are not liable for their public acts.*

4. The mayor and members of a city council cannot be held personally liable for moneys appropriated and paid over to a private corporation producing opera in the city where no fraud is shown, but, on the contrary, the utmost good faith was established and conceded in relation to the appropriation.

5. Officers of government who act in a legislative or judicial capacity are not personally responsible for *ultra vires* or wrongful acts which are the result of a mistaken understanding of their rights and duties and not of deliberate fraud or corruption.

*Assumpsit.* Statutory demurrer to statement of claim. C. P. No. 2, Phila. Co., Dec. T., 1927, No. 14100.

*Elton J. Buckley*, for plaintiffs.

*Augustus Trask Ashton*, City Solicitor, and *James Francis Ryan* and *Ernest Lowengrund*, Assistant City Solicitors, for defendants.

GORDON, JR., J., May 31, 1928.—This is an action in *assumpsit* brought by the plaintiff, as a taxpayer, against the City of Philadelphia, W. Freeland Kendrick as Mayor of said city, and two groups of defendants, who constituted the councils of said city in the months of December, 1924, and December, 1925. The number of defendants joined as members of said councils are 29, of whom 10 are common to each of said councils, and, of the remaining 19, 10 were members of the council in 1924 and 9 in 1925. The suit is to recover from the defendants a total principal sum of $40,000, appropriated by two ordinances, one passed in December, 1924, and the other in December, 1925, to the Philadelphia Civic Opera Company, a private corporation organized under the laws of the Commonwealth, and subsequently paid to said company in pursuance of the said ordinances. Of the $40,000 thus appropriated, $15,000 were appropriated in December, 1924, and $25,000 in December, 1925. The statement of claim sets forth, in addition to the facts just recited, that the ordinances referred to were *ultra vires* and void, being gifts of public money to a private person; that the appropriations in question were, therefore, illegal; that the plaintiff made demand upon the City Solicitor, shortly before the institution of the suit, to begin proceedings against the defendants for the recovery of said illegally appropriated moneys; and that the City Solicitor has neglected and refused to comply with said demand. The City Solicitor has filed an affidavit of defense, executed by the present Mayor of the city, raising questions of law under section 20 of the Practice Act of May 14, 1915, P. L. 483, and the case is before us upon that statutory demurrer.

Klauder et al. *v.* Cox et al.

We have carefully considered the arguments of counsel upon the questions of law raised by the statutory demurrer, and are of opinion that the affidavit of defense is sufficient, as the suit is fatally defective in at least four glaring particulars. The first relates to the standing of the plaintiff to maintain this action in *assumpsit* for the benefit of the city. It is fundamental that a taxpayer whose right is common with all taxpayers has no standing at law to prosecute an action for the public benefit. He cannot, therefore, maintain this action of *assumpsit* for the benefit of the city, even if it be assumed that the defendants are personally liable for the alleged wrongful appropriations of public moneys. The right which he is asserting is the product of equitable principles and considerations, and he must resort for its enforcement to the jurisdiction which created and recognizes it.

The second particular in which the suit is defective relates to the allegation in the statement that the City Solicitor has refused to bring suit against the defendants, as demanded by the plaintiff. Even if this action were otherwise maintainable, the requirement of law that, to enable a taxpayer to bring a suit which the municipal authorities should, in the first instance, prosecute, he must show a demand upon them and their refusal to do so, is not met by showing that the demand, as in this case, was made upon the City Solicitor alone. That officer is only the attorney of the city, and he cannot institute such a suit without proper municipal authority. To meet this requirement and ground the right of action, the demand should have been made upon such municipal officers as could lawfully authorize and direct such a suit to be brought.

With respect to the third particular in which the suit is defective, it will be noted that the illegal appropriations sought to be recovered by the plaintiff were made in two different years by distinct and separate councils, the membership of which was entirely different, but ten of the defendants being common to each of the councils. The suit is, therefore, bad for duplicity or misjoinder of actions and defendants. In 23 Cyc., 401, the law is thus clearly stated: "In order that causes of action against several defendants be joined, they must each affect all defendants; so distinct causes of action against different defendants cannot be joined, although in favor of the same plaintiff. For example, a joint action will not lie against two for their several debts upon separate obligations, or for breach of distinct covenants. Nor can a joint action be maintained against a principal debtor and a guarantor, or against principals and sureties where they are liable in different amounts. Upon the same principle, independent tortfeasors, neither of whom has control over the acts of the others, cannot be sued jointly." Any personal liability that might arise against these defendants in connection with the two appropriations would be upon distinct and separate acts, committed by entirely different groups of persons. Each council was independent of the other. Their acts had no common connection, and, within the respective groups, the responsibility of their members is personal and independent, the wrongs, if any, which were committed being unrelated, both in the *personnel* of the actors and in the subject-matter of their acts. Thus, there is a clear misjoinder, in the one suit, of the two actions and of the two groups of defendants, and the statutory demurrer on this ground is good.

The three questions of law just discussed relate to matters of form and procedure. The fourth and last goes to the very substance of the suit, and is conclusive against the plaintiff's right of recovery in whatever form of action it may be sought. It is fundamental in our law that officers of government who act in a legislative or judicial capacity, are not personally respon-

sible for *ultra vires* or wrongful acts, which are the result of a mistaken understanding of their rights and duties and not of deliberate fraud or corruption. This principle rests upon the soundest public policy. To hold otherwise would be destructive of that freedom of action and judgment in public officers which is so essential to a full, adequate and disinterested performance of their duties. No officer performing discretionary functions can discharge them with an eye single to the public good, who is trammeled by threats of personal responsibility for honest mistakes of judgment. To establish such a doctrine of responsibility might, in a few instances, result in reimbursement of the public treasury. In the long run, however, the benefits that would follow such a doctrine would be far outweighed by the harm that would result from the consequent weak and timid performance of official duty. The public advantages to be derived from the activities of a free and personally disinterested official, who may act without fear of being mulcted in damages for honest mistakes, are obvious, and justify the restriction of personal responsibility to cases involving corrupt and fraudulent official conduct.

The diligence of counsel has disclosed no case in this State in which the question now before us has been definitely raised and decided, so far as concerns the personal responsibility of a member of a municipal council. The authorities outside of this jurisdiction are not entirely in accord, but an examination of them will disclose that many of the decisions cited by the plaintiff as supporting his position are clearly distinguishable upon their facts and that the great weight of authority is in favor of exempting public officials who act in a discretionary or legislative capacity from personal responsibility for their mistakes.

Thus, in Sebring *v.* Starner, 197 N. Y. Supp. 201, the suit was against the official who had illegally paid out public money and the person who received it, and, while the court restrained further payments, it dismissed the suit for restitution of the money already paid in the following language: "It was conceded on the trial that there was no collusion on the part of the defendants in making the payments to Drake for the use of his automobile. When an action for the restitution of public moneys is brought jointly against the officials who paid or authorized the payment and the official who received it, if there were no intentional wrongdoing or collusion, restitution cannot be enforced, even though there were a technical illegality in making the payment. . . . In Stetler *v.* McFarlane, the action was instituted against only the officer who received the money, but the rule as to joint suits is reiterated. After holding that, when 'the transaction has been executed without fraud or wilful wrong,' the officials who made the payment are not liable, the court says: 'The result will not be changed, it seems, though the one who profits is a joint defendant, if joint relief is claimed.' "

Again, in Baker et al. *v.* The State, 27 Ind. Reps. 485, in which a conviction of the members of a common council for maintaining a nuisance upon the theory that the nuisance was created by an *ultra vires* ordinance was reversed, the court said: "The appellants, as members of the common council, were in the exercise of a discretion given them by law. In such case, there is no individual liability, either civilly or criminally, unless they acted corruptly." The case of Incorporated Village of Hicksville *v.* Blakeslee et al., 134 N. E. Repr. 445, illustrates the same principle: "The demurrer then presents the square question whether a councilman acting in good faith who votes for an unauthorized, and, therefore, void and illegal, resolution or ordinance thereby becomes liable to the village for such sum as may thereafter

be paid under the supposed authority of such void resolution or ordinance. That legislative officers are not liable personally for their legislative acts is so elementary, so fundamentally sound, and has been so universally accepted, that but few cases can be found where the doctrine has been questioned and judicially declared. . . . We see no reason for applying a different rule to a municipal legislator, who, in good faith, exercises his discretion in voting for a resolution void because of legislative limitations upon his power, than is applied to a state legislator exercising his discretion in voting for a statute void by reason of a constitutional limitation upon his power." See, also, Lough *v.* City of Estherville, 122 Ia. 479; Jones *v.* Loving, 55 Miss. 109; Com. *v.* Kennedy, 118 Ky. 618.

The foregoing cases indicate the weight of authority in this country to be against holding the members of a municipal council liable for their *ultra vires* acts where they have acted honestly but mistakenly. Indeed, in only two of the cases brought to our attention from American jurisdictions has a contrary rule been adopted: Wilcox *v.* Porth, 154 Wis. 422, and Brown *v.* Railroad et al., 188 N. C. 52. In all the other cases cited by counsel for the plaintiff, the facts clearly distinguish them from the case before us, and they are not, therefore, in conflict with the well-settled trend of authority already indicated. Thus, in Neacy *v.* Drew, City Treasurer, et al., 187 N. W. Repr. 218, the bill of complaint, to which a demurrer had been filed, was held good because the suit was against a city official and fraud and bad faith were charged. So, also, in City of East St. Louis *v.* Flannigen et al., 34 Ill. App. 596, the suit was against a treasurer and his bondsman and was based upon allegations of misappropriation of funds. And, again, in Russell *v.* Tate, 52 Ark. 541, while the aldermen of an incorporated town were held liable for the illegal appropriation to themselves of a sum of money to aid them in building a court-house, which they had personally bound themselves to present to the county, the court distinguished the case from one calling for an application of the ordinary rule upon the ground that the illegally appropriated moneys were received by the councilmen themselves: "As against the liability of these defendants, it is contended that a city council being in some sort a legislative body, its members are not liable for the erroneous exercise of their discretion in voting upon measures before them. This is true: Jones *v.* Loving, 55 Miss. 109; Freeport *v.* Marks, 59 Pa. 253. But where, after exercising their discretion in voting $1000 of the money of the town to pay an obligation which they and a few others had bound themselves to discharge, they or their building committee *took the money*, it was a conversion of trust funds, for which each of them, as also the mayor who ordered, and the treasurer who made, the payment, are liable."

A contrary doctrine appears to be well established in Canada, where it has been frequently held that municipal officers, such as aldermen, who, by their official action, have illegally spent the city's money, can be held personally responsible for such expenditures: Trudel et al. *v.* Thibault et al., 26 Rapports Judiciaries cour superieure de Quebec, 542; Patchell *v.* Raikes, 7 Ontario Law Rep. 470. In these cases, the members of a municipal council are considered as trustees, who are bound to know their rights and duties, and the law applicable to trusteeships, at least in so far as the expenditure of public moneys is concerned, is applied to them. This seems to us to overlook the fundamental conception of the functions and duties of governmental officers, and to take too narrow a view of the capacity in which such officers act in the expenditure of public moneys. There would seem to be no justification in reason for holding that the passage of ordinances appropriating public moneys is any less a

legislative act than the passage of any other form of law or ordinance. The raising and expenditure of the public revenues have always been among the most important forms of governmental activities, and occupy, of necessity, a large part of the legislative attention. In performing this function, municipal legislators undoubtedly act in a legislative capacity, and, as already pointed out, the benefits to be derived from the free and unthreatened exercise of it are not to be frittered away by considerations of the small temporary advantages that might result from an abandonment of the sound public policy which exempts them from personal responsibility for their honest mistakes. The remedy for such mistakes by governmental officials lies in the electorate, who can rebuke a careless or incompetent servant by refusing him a continuance of its confidence at the polls. Beyond this the public officer cannot be called to account, except for wilful and corrupt practices.

There is no contention in the case before us that the defendants acted corruptly or with a deliberate intention to exceed their powers. The appropriations were made in 1924 and 1925, when, it may be assumed, there was no thought that they did not have the power to pass the ordinances in question. It has been only recently that a decision of our highest court has held a later ordinance of a similar kind to be *ultra vires* and void, and this probably brought about the present suit. Indeed, counsel for the plaintiff has candidly admitted that, in passing the ordinances, the defendants acted in the utmost good faith and under an honestly mistaken belief that they possessed the power to enact them. To hold legislative officers personally liable under such circumstances would halt the arm of government in one of its most important functions and would impair that prompt, efficient and disinterested administration of the public business which is so desirable for the public welfare. It would tend to paralyze the judgment of an honest official by putting him in terror lest, by an innocent mistake, he might jeopardize his entire private fortune. The considerations which remove this menace to disinterested official action are grounded in the wisest statesmanship and the most farsighted public policy.

We, therefore, hold that the statement of claim shows no cause of action against the defendants; that the affidavit of defense raising questions of law is sufficient; and, accordingly, enter judgment in favor of the defendants.