## J. S. Green v. John Lepley and Charles Lepley.

1. SALES—*Possession of Property Sold Remaining in the Vendor—Delivery—Common Law Doctrine.*—At common law a sale of goods or chattels where the property remains in the possession of the vendor, will not defeat the claim of a judgment creditor or a subsequent *bona fide* purchaser from the vendor, without notice of the prior sale.

2. ASSUMPSIT—*For Goods Wrongfully Converted into Money.*—When goods have been wrongfully converted into money by the wrongdoer, an action of assumpsit for money had and received can be maintained; but such action can not be maintained, except on proof that the wrongdoer has converted·the goods into money and has received the money.

Attachment.—Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the October term, 1899. Affirmed. Opinion filed May 10, 1900.

JAMES A. FULLENWIDER and ROBERT A. EATON, attorneys for appellant.

MELVILLE & STOBBS, attorneys for appellees.

MR. JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment for costs in favor of appellee John Lepley, and against appellant, in a suit by attachment by the former against the latter. The cause was tried by the court without a jury, by the agreement of the parties. October 25, 1893, a writ of attachment issued and a declaration in assumpsit consisting of the common counts was filed, to which appellee pleaded the general issue. October 26, 1893, the writ of attachment was served on John H. Wood, as garnishee, who, July 28, 1897, answered interrogatories to him as such garnishee, stating, in substance, that October 10, 1893, John Lepley shipped to him a large number of cattle, among which were eight cows and eight steers branded 7F on the left hip and marked by a split in the left ear; that he sold the cows and steers so branded and marked for the sum of $487.55, which amount he held to be paid to whomsoever the court might direct.

September 25, 1897, Charles Lepley filed his plea of inter-
pleader, alleging that he was the owner of the eight steers
and six of the cows branded as heretofore stated, and that
the cattle were shipped by John Lepley from Montana to
Chicago under an agreement with John Lepley to sell the
cattle in Chicago, for him, Charles Lepley, and that the
money arising from the sale should be paid by the pur-
chaser to him, etc. To this interplea the appellant replied
that the money garnisheed was his money and not the money
of the interpleader.

The court found the issues and rendered judgment for
John Lepley, the defendant in attachment, as heretofore
stated, and the question to be decided is whether the find-
ing and judgment are sustained by the evidence. The issues
formed by the declaration and plea of the general issue,
and the issue on the plea of interpleader were tried together,
appellant assuming the opening. The appellant produced
and put in evidence a mortgage and duplicate thereof, of
date January 13, 1893, from Frank Bain to appellant, pur-
porting to mortgage to appellant "about 460 head of cattle
now in the range sixty miles southeast of Benton, Montana,
branded 7F on the left thigh or hip. All increase of same."
The mortgage is stated to be to secure payment of three
notes of date January 13, 1893, one for $4,000, payable on
demand, one for $3,000 due December 1, 1893, and one for
$500 due December 1, 1895. The mortgage recites, "this
herd is now in charge of William Wareham, and pledged to
the Stockmen's National Bank of Benton, and the herd
assigned to said bank as collateral security for the pay-
ment of a debt amounting to $3,200."

The mortgage was recorded in Fergus county, Montana,
January 13, 1893, and in Choteau county, Montana, August
10, 1893.

The notes referred to in the mortgage are not in the
record, but the evidence is that appellant owns them. It
was proved by Eaton, a witness for appellees, that fourteen
head of the cattle sold by Wood, the garnishee, were in-
cluded in the mortgage, and that appellee John Lepley

told him that he shipped the cattle with his own to Chicago. The appellant then introduced some sections of the Montana statute in evidence, most of which are not sufficiently abstracted, and rested. Charles E. Duer, whose deposition was read in evidence, testified that he purchased from Frank Bain, in May, 1892, for the sum of $2,500, the herd of cattle branded 7F, took immediate possession of them, and kept them till July, 1893, when he sold them to Charles Lepley for $15 per head, and that the cattle in question in this action are part of the cattle so purchased and sold by him, and that Bain had no interest in them after the sale to him in 1892. Certified copies from the record of the recorder of marks and brands of the State of Montana were put in evidence, showing assignments from Frank Bain to Duer of the stock brand and mark of the cattle, the one of date February 13, 1892, and the other of date May 13, 1892. The recorder of marks and brands also testified to said assignments.

Frank Bain, a witness for appellee, testified that he gave Duer a bill of sale of the cattle and an assignment of the brand. He claims, however, that the apparent sale to Duer was not an actual sale; that it was merely a security; and admits in substance, that at the time of the apparent sale he was indebted to the Stockmen's National Bank, of which Duer was cashier, in the sum of $3,422.10, for which sum he gave his note. The evidence shows that Duer was acting for the bank. There is no evidence that Bain's indebtedness to the Stockmen's National Bank has been paid.

Bain says his agreement with Duer was, that if he, Bain, should pay him the money, he would return the cattle; that he was to return any cattle remaining after receiving sufficient to pay his claim. Again Bain says: "All credits on the loan came from collections and sales of cattle." In a letter from Duer to appellee, of date September 19, 1893, introduced in another deposition of Duer read on behalf of appellant in rebuttal, Duer writes: "Mr. Bain's indebtedness to this bank is about $3,500, which will be paid out of the first receipts for cattle."

Appellant's counsel contend that Duer's deposition was improperly admitted in evidence, because it was taken before the filing of the interplea. The deposition was taken on behalf of John Lepley, the appellant, and the defendant in the attachment suit, January 24, 1896, on interrogatories filed on behalf of appellant. No cross-interrogatories were filed by appellee. The deposition was taken by a commissioner at Fort Benton, by virtue of a *dedimus* or commission duly issued. The record shows that it was read in evidence both on behalf of John Lepley, and Charles Lepley, the interpleader. Both issues being tried, if admissible for either of the appellees, it was properly admitted. Appellant's counsel contend that the deposition is not competent evidence for John Lepley, on the ground that a defendant in an action of this kind can not prove paramount title in a third person without showing his agency from or connection with such persons. Eaton, appellant's own witness, was examined and testified as follows, with reference to a conversation which he had with John Lepley :

Q. "What did he state on the subject, if anything?" A. "Well, during the course of the conversation he said that he shipped the cattle down there. They were loaded up with a lot of his own; that they occupied the same ranges, and that he frequently did that; shipped cattle for—I think it is a nephew—Charles Lepley, and that these were shipped in that way."

This evidence shows that John Lepley acted as the agent of Charles Lepley in the shipping of the cattle, and it was clearly competent for John Lepley, the defendant in the attachment suit, to show that he was a mere agent in disposing of the cattle, and not the owner. Duer's deposition is to the effect that Charles Lepley was the owner.

Preuitt's deposition is also objected to, but he testified to nothing more than appeared by the transcript of the records in evidence.

In opposition to the claim of Charles Lepley, counsel object, first, that the apparent sale to Duer was really by way of mortgage or pledge to secure Bain's indebtedness to

the Stockmen's National Bank, and that such being the case, Duer could not legally sell, except at public auction; and secondly, that the evidence tends to prove that there was no delivery of the cattle by Duer to Charles Lepley prior to the recording of appellant's mortgage.

The sale to Charles Lepley occurred in July, 1893.

The Montana statute in evidence provides that a sale by a pledgee must be by public auction on notice, etc., and the sale by Duer to Charles Lepley was not so made, and if the transfer from Bain to Duer was, as counsel contend, really a pledge, although in form a sale, then, as between Bain and Duer, the objection might be of some force, provided it were shown that the cattle would have brought a better price if sold at public auction. But as between Bain or appellant and Charles Lepley, the objection is untenable. The evidence is that Bain gave to Duer a bill of sale. The latter had all the *indicia* of ownership. The sale of the brand from Bain to him was duly recorded, and third persons, without notice of the secret arrangement between Bain and Duer, were fully warranted in dealing with Duer as the owner. The section of the Montana statute relied on by appellant can not, in our opinion, be held to apply to such secret pledges, the pledges having been invested by the owner with the muniments of absolute title.

In making the objection that there was no delivery of the cattle to Charles Lepley prior to the recording of appellant's mortgage, counsel seem to rely on the common law doctrine that a sale of goods or chattels, the property remaining in the possession of the vendor, can not defeat the claim of a judgment creditor or a subsequent *bona fide* purchaser from the vendor, without notice of the prior sale. The reason of the rule is, that the vendee, by permitting the vendor to remain in possession as formerly, and as the ostensible owner, puts it in his power to obtain credit on the faith of such ownership, and to dispose of the property to innocent third persons, and that to permit the vendee to set up his title in such case, would operate as a fraud on such third persons. It is obvious that this doctrine can not be

applied to the facts of this case. Bain was not in possession of the cattle when he executed appellant's mortgage. Duer, to whom he had sold them, was in possession, and no question is presented of conflict of title between Charles Lepley, Duer's vendee, and any judgment creditor of or subsequent purchaser from Duer, or the Stockmen's National Bank. It appears from the evidence, and is substantially admitted by appellant's counsel, that the sale from Duer to Charles Lepley was on credit. In such case the title passes (Benjamin on Sales, 6th Ed., Sec. 676), and if Charles Lepley permitted Duer to retain nominal possession of the cattle which, at the time of the sale, were on the ranges, until the fall round-up, we can not perceive that this is any valid ground of complaint on the part of appellant. It appears from the evidence that since the sale to Charles Lepley he has paid $2,100 on the purchase.

There is another consideration, however, which we deem conclusive against appellant's right of recovery. It is well settled that judgment can not be rendered against a garnishee until after judgment against the principal debtor. The declaration contains only the common counts for goods sold and delivered, and the consolidated money counts. Appellant's counsel, apparently recognizing the inappropriateness of the action, say that the action, while brought in assumpsit, is really in the nature of trover. When goods have been wrongfully converted into money by the wrongdoer, an action of assumpsit for money had and received can be maintained; but such action can not be maintained, except on proof that the wrongdoer has converted the goods into money and has received the money. Morrison v. Rogers, 2 Scam. 317; Stahl v. Ansley, 2 Gilm. 32; De Clerq v. Mungin, 46 Ill. 112; Cushman v. Hayes, Ib. 145.

In the present case there is no evidence that appellee John Lipley has received the proceeds of the sale of the cattle in controversy, and the answer of the garnishee is to the contrary. Therefore there can be no judgment against appellant, and, consequently none against the garnishee.

The judgment will be affirmed.