## Nelson Morris v. Malcolm M. Jamieson et al.

1. REMEDIES—*Actions for Money Had and Received for the Use of the Plaintiff.*—The action for money had and received for the use of the plaintiff is an equitable action and lies for money received by the defendant, which in equity and good conscience he should not retain but should pay the same to the plaintiff.

2. SAME—*Requisites of a Recovery for Money Had and Received.*—The right of a recovery in an action for money had and received depends upon the proof of two things: First, that the defendant has actually received the money; and second, that in equity and good conscience he should pay it to the plaintiff.

3. RECOUPMENT—*In Actions for Money Had and Received.*—In an action for money had and received, if the defendant has received the money he may, when sued for it, recoup or set off any indebtedness of the plaintiff to him.

Assumpsit, for money had and received. Appeal from the Circuit Court of Cook County; the Hon. EDWARD P. VAIL, Judge, presiding. Heard in this court at the March term, 1901. Affirmed. Opinion filed December 12, 1901.

Statement.—May 30, 1896, appellant sued Malcolm M. Jamieson and others, constituting the firm of Jamieson & Co., in assumpsit. The declaration consists of the common counts, including a count on an account stated, a count for interest and a count for money had and received. The defendants pleaded the general issue. At the conclusion of the evidence for the plaintiff, the court, on motion of the defendant, excluded the plaintiff's evidence and directed the jury to find the issues for the defendants. This appeal is from the judgment on the verdict so rendered.

The suit was for an alleged balance due from the defendants to the plaintiff. The only evidence produced on the trial were certain documents and letters and testimony of Charles E. Davis, secretary of appellant. The evidence tended to prove that, about December 1, 1892, appellant sold by appellees, as his brokers, 1,000 shares of Street's Stable Car Line stock (hereinafter called Street stock) for the sum of $29,000, deliverable to purchaser in sixty days; that by appellant's request Jamieson & Co. borrowed the

stock for him for delivery on his contract of sale, and paid to the borrower $30 per share, or in all $30,000, on the loan, and delivered the stock to the purchaser about January 31, 1893.

Davis testified that business relations between appellant and appellees, involving the purchase and sale of about 18,000 shares of stock, began some time in 1892. The following statement or memorandum of the sale of the Street stock, put in evidence by appellant, was inclosed to appellant in a letter from Jamieson & Co., of date January 21, 1893:

" Jamieson & Co.,
Bankers and Brokers,
187 & 189 Dearborn St.

MEMORANDUM.
Sold for act. No. 25.

| Dec. 1. | 1,000 Street's s/60 29............ | $29,000 | |
| | 60 days' int.................... | 290 | |
| | | $29,290 | |
| | Less Dividend 1 per cent......... | 1,000 | $28,290 |
| | Less Com'n..................... | | 125 |
| | | | $28,165 |

Ch'go, Jan'y 31, 1893."

The letter contains the following:

" We made deliveries of 1,000 shares and hand you herewith memorandum of same. We borrowed the stock for four months flat at 30."

Davis testified that the letter referred to the 1,000 shares in question, sold about December 1, 1892, and that the word " flat " means without interest; also, that appellant did not pay for the borrowed stock. There is no evidence that appellant advanced to or deposited with appellees any money on account of the sale.

Appellant also put in evidence eight statements made by appellees to appellant at the end of each of the months of January, February, March, April, May, June, July and August, 1893. The following is a sample of the statements:

"Feb. 2, A. M.

| Dr. | No. 25. | In account with JAMIESON & Co. | |
|---|---|---|---|
| Date. | | Amount. | Interest. |
| Jan. 31. | Balance short, | 28,165 | |
| " " | | 5,968.02 | 30.67 |
| | | 34,133.02 | 30.67 |

Cr.

| Date. | | Price. | Amount. | Days. | Interest. |
|---|---|---|---|---|---|
| Jany. 1. | Balance | | 5,937.35 | 31 | 30.67 |
| 31. | 1,000 Street's s/60 29 | | | | |
| | less Div. 1 per cent, | | 28,165 | | |
| | Interest, | | 30.67 | | |
| | | | 34,133.02 | | 30.67 |

| Feb. 1 | Balance | 5,968.02 |
|---|---|---|
| | do. short | 28,165 |
| | 1,000 Street's car line. | |
| | 1,000   do.   s/60." | |

In regard to these statements, Davis testified that the credit balance of $28,165 appears separately in the first statement of January 31, 1893, but in subsequent statements it is merged with another 1,000 shares of Street stock; that the amount representing the 1,000 shares in question is merged with other items in all statements subsequent to the statement of date January 31, 1893, above shown; also that there is no controversy in regard to stock other than the 1,000 shares sold December 1, 1892. It was admitted by appellant's counsel that appellant claimed nothing in the suit on account of any transaction with Jamieson & Co. except the transaction relating to the 1,000 shares sold December 1, 1892, and the monthly statements were admitted in evidence only in so far as they relate to those shares. Davis testified that the last three statements showed only 1,000 shares, namely, the shares in question, and that the balances shown are made up of two items, a credit balance on account of the sale of the 1,000 shares, and a credit to appellant on account of money deposited by him with appellees.

The last statement shows the following :

Morris v. Jamieson.

| " Sept. 1 | Balance, | 3,133.42 |
| | do. short | 29,872.66 |
| | 1,000 Street's." | |

This, in accordance with Davis' testimony, shows a balance of $29,872.66 to appellant's credit on account of the short sale, and a balance to his credit of $3,133.42, on account of money theretofore deposited by him with appellees.

Davis testified that August 29, 1893, he tendered to appellees 1,000 shares of Street stock; that the market value of the 1,000 shares so tendered was on that day $18,000, and that on making such tender he demanded from appellees the sum of $11,872.66, the same being the difference between $29,872.66, which appellant claimed as a credit to him, and $18,000, the market value of the stock tendered; that Jamieson, appellee, took the stock, requested witness to remain a few moments in his office while he went on change, and that Jamieson went out, returned in about fifteen minutes and handed the stock back to witness, saying that the person from whom the stock had been borrowed had refused to receive it, and that witness took the stock away with him.

Davis testified that he did not know how many times Jamieson & Co. had borrowed stock on account of the sale in question; that they reported having borrowed it on two occasions.

The evidence tends to show that the stock was borrowed from a Mr. Koch.

The following correspondence occurred between the parties :

" Chicago, June 3, 1893.

Nelson Morris, Esq., City.

Dear Sir : We have borrowed 1,000 shares Street's Stable Car Co. at 90 days from May 31st, the lender paying us interest at the rate of 2 per cent per annum.

Yours truly,
Jamieson & Co."

" Chicago, June 27, 1893.

Nelson Morris, Esq., City.

Dear Sir : We received from you yesterday 500 shares

of Street's to deliver on contract expiring to-day, which we have attended to, and have deposited $15,000 to your credit in the First National Bank as per your instructions. Regarding proxies for the annual meeting of Chicago Junction Railways and Union Stock Yards Company, we regret to say that we can not obtain any for you.

Yours truly,

JAMIESON & CO."

" CHICAGO, August 22, 1893.

NELSON MORRIS, ESQ., U. S. Yards, Chicago.

DEAR SIR : We notified Mr. Ed. Koch yesterday, from whom we borrowed the thousand shares stock for your account, that you desired to deliver the same at the expiration of contract, or before, if agreeable to him. He notifies us to-day that he is not in financial condition to accept the stock now, or at the expiration of contract.

Yours truly,

JAMIESON & CO."

" CHICAGO, ILLS., Aug. 24, 1893.

MESSRS. JAMIESON & CO., 187 Dearborn St., City.

GENTLEMEN : Yours of the 22d was duly received. Our Mr. Davis called to see your Mr. Jamieson twice yesterday in regard to it, but not finding him in called again to-day, and now informs me that you tell him that Mr. Koch never put up any margins on this deal, although you called upon him to do so some time ago, and that you did not thereupon order the stock sold under the rules of the exchange, because there was no market for it. In view of these facts and the fact that you never heretofore advised me of them, I do not see how I can do other than look to you to make good the amount which I should have received had you properly looked after the trade and not neglected my interests. You will, therefore, kindly oblige me by sending me your check for the amount due me, based on the present market price for the stock. Kindly give this matter your immediate attention.

Yours truly,

NELSON MORRIS."

The amount claimed by appellant is $11,872.66, being, as above stated, the difference between $18,000, the market value of the stock tendered August 29, 1892, and $29,872.66, the amount claimed as a credit on the sale, with interest on said difference from August 29, 1893. No claim is made on account of money advanced to or deposited with appellees

by appellant. Davis testified that the other balance, exclusive of the $29,872.66, was paid.

Other parts of the evidence may be referred to in the opinion.

DUPEE, JUDAH, WILLARD & WOLF, attorneys for appellant.

F. A. RIDDLE and J. E. MUNROE, attorneys for appellees.

MR. JUSTICE ADAMS delivered the opinion of the court.

The only controversy between the parties is as to the 1,000 shares of Street's Cable Car Line stock sold by appellees for appellant, and by the latter's order, December 1, 1892, for $29 per share, or $29,000 in all, and the main question to be decided is, whether there can be any recovery by appellant, in the present suit, and under the pleadings, on account of that sale.

It seems to be conceded by counsel for appellant that, if there can be a recovery, it must be either on the count on an account stated, or on the count for money had and received. Apparently, counsel for appellant do not much rely on the former count, and we think it clear that there can be no recovery under that count. In the letter of January 31, 1893, from appellees to appellant, inclosing the statement or memorandum of the sale of the 1,000 shares, they informed appellant that they had borrowed the stock for four months flat at 30, and had delivered the 1,000 shares on the sale. Davis, appellant's private secretary, and who apparently was managing the business for appellant, testified that " 30 " meant $30 per share or $30,000 in all. He also testified that appellees borrowed the stock at appellant's request and delivered it to the purchaser, and that it is customary, in borrowing stock, to pay the market price at the time of borrowing. The letter of January 31, 1893, inclosing the memorandum of the sale, was a part of the report of appellees of the transaction, and informed appellant, in substance, that he was debited in his account with appellees with $30,000. Davis testified that the stock was delivered in January, 1893, by Jamieson & Co., and that January 31,

1893, Jamieson & Co. reported to Nelson Morris that they had borrowed 1,000 shares of stock and delivered it on the short sale, and that they sent a memorandum of the transaction. The evidence then being that appellant was notified, by the report of appellees, that they had made a sale of stock for $29,000, deliverable in sixty days, and had expended $30,000 in borrowing the stock for the purpose of delivery, it is manifest that there can be no recovery under the count on an account stated. The letter and memorandum, taken together, constitute the report, and show an indebtedness from appellant to appellees. But appellant's counsel rely mainly on the count for money had and received, and the next question is whether the evidence is such as to warrant a recovery under that count. The action for money had and received for the use of the plaintiff is an equitable action. It lies for money received by the defendant, which, in equity and good conscience, he should not retain, but should pay to the plaintiff. In such case the law will imply a promise of the defendant to pay the money to the plaintiff. 2 Greenl. on Evidence, 13th Ed., Sec. 117; Shaw v. Inhabitants, etc., 7 Cush. 442; Trumbull v. Campbell, 3 Gilm. 502; Farrar v. Hinch, 20 Ill. 646, 653; Watson v. Woolverton, 41 Ib. 241; Alderson v. Ennor, 45 Ib. 128; Belden v. Perkins, 78 Ib. 449; G. & M. R. R. Co. v. Burns, 92 Ib. 302; Green v. Lepley, 88 Ill. App. 543, 548.

The right of recovery depends on proof of two things: first, that the defendant has actually received the money; second, that in equity and good conscience he should pay it to the plaintiff. If the defendant has received the money, he may, when sued for it, recoup or set off any indebtedness of the plaintiff to him. Belden v. Perkins, *supra*, p. 453.

The appellees having reported to appellant, January 31, 1893, that they had delivered the 1,000 shares of stock to the purchaser, it is a legitimate conclusion that they received from the purchaser, at the time of delivery, the purchase price of the stock, $29,000; but the same report informed appellant that appellees had paid $30,000 to the lender of the stock, which appellant had authorized them to

borrow for the purpose of delivery to the purchaser. So that, omitting all deductions for commissions, etc., as shown by the memorandum of sale, while appellees were indebted to appellant in the sum of $29,000, he was indebted to them in the sum of $30,000. Therefore they had no money which, in equity and good conscience, they should have paid to appellant, nor is there any evidence, under the count in question, that there was any money received by appellees and unpaid to appellant which, in equity and good conscience, they should pay to him. Appellant, however, seeks a recovery on the theory indicated in appellant's letter to appellees, of date August 24, 1893, viz., that it was the duty of appellees to call on Koch, the lender of the stock, for margins, when the market value of it commenced to decline, and to continue so to do as long as the decline continued, in which case, had the margins been put up, there would have been no loss on the borrowed stock, and there would have been a balance to appellant's credit; and that, on Koch failing to put up margin, when first called on, it was appellees' duty to sell the stock on the exchange, and thus stop the loss. There can be no recovery on this theory. First, the evidence does not support the assumption that it was appellees' duty to call for margins on the borrowed stock. If such was appellees' duty, it must so appear, either from the contract between the parties, or from evidence of a custom or trade usage to call for margins in such a case, so that the parties must be presumed to have contracted with reference to it. There is no evidence of any contract between the parties, that appellees should call for margins on the borrowed stock.

The witness Davis testified that he dictated a letter, of date September 9, 1893, from appellant to appellees, in which the following occurs:

"Replying to yours of 7th, I beg to say that it was your duty as brokers to protect my interest by proper margin or security; that you failed to do. Moreover, you did not even notify me that you were not doing it, or that Mr. Koch was unable to put up margins or securities. Had you done what your duty as brokers demanded, and what I

have every right to expect, the amount due me would have been in my hands long ago. Not having done so, you are, therefore, liable to me for it."

Davis testified:

"As to why I wrote to Jamieson & Co. as I did about their duty, I had had transactions in stocks running up into hundreds of thousands of shares, and I never had known of a case before where the broker did not call margins to protect a trade of that kind."

What is said in the letter of September 9, 1893, as to the duty of appellees, is a mere expression of the witness' opinion, and the testimony of Davis last referred to is merely a statement of his experience in his personal transactions. The evidence falls far short of proving a custom of brokers to call on the lender of stock for margins. Bissell v. Ryan, 23 Ill. 571; Lyon v. Culbertson, 83 Ib. 33; Coffman v. Campbell, 87 Ib. 98; 27 Am. & Eng. Ency. of Law, p. 719.

Secondly, appellant's theory assumes that, under the count for money had and received, which count by its very terms indicates that the money sued for was received by the defendant, it is not necessary to prove that the defendant actually received the money, but it is sufficient to prove that the defendant was negligent, and that had he not been so he would have had the money.

Such is not the law. To warrant a recovery it must appear from the evidence that the appellees actually received money which in equity and good conscience they should pay to appellant. Morrison v. Rogers, 2 Scam. 317; Stahl v. Ansley, 2 Gilm. 32; Trumbull v. Campbell, 3 Gilm. 502; De Clerq v. Mungin, 46 Ill. 112; Cushman v. Hayes, 46 Ib. 145.

Proof of negligence will not support an action for money had and received.

Appellant's counsel urge that the evidence does not show that appellees advanced any money for the borrowed stock.

Davis, examined by appellant's attorneys, testified as follows:

"Jamieson & Co. probably borrowed the stock around thirty. I don't remember exactly. They had to put up with the man they borrowed the stock from, the market price of the stock. I suppose Jamieson & Co. furnished the money to borrow it. Nelson Morris did not give them his check for it; he did not pay for it—never."

In his subsequent examination on another day, he testified:

"I did not know before August 29, 1893, that Jamieson & Co. borrowed the thousand shares of stock for delivery on the sale that had been made on December 1, 1892. They wrote us that they had borrowed it. I do not mean to say —referring to my testimony of yesterday—that I know that to be an absolute fact. I only know it from their letters. I don't know that I ever disputed it."

The statement of Jamieson & Co. in their letter of January 31, 1893, inclosing the memorandum of the sale, that they had borrowed the stock, paid thirty on the loan, and delivered the borrowed stock to the purchaser, has never been disputed by either appellant or his agent, Davis. Appellant claims in this suit that appellees received from the purchaser of the stock $29,000, the purchase price, which could not be, if the stock were not delivered, and appellant neither furnished the stock for delivery, nor advanced any money for its purchase, or for borrowing it. Appellant's letters to appellees, of August 24 and September 29, 1893, impliedly admit the borrowing of the stock from Mr. Koch. Appellees' letter of June 3, 1893, stating, "We have borrowed 1,000 shares of Street's stock at ninety days from May 31st," must refer either to an extension of the original loan of the stock, or to some other transaction than that in question. However, this is unimportant, in our view of the case.

We find no reversible error in the court's rulings on evidence, and are of opinion that the court did not err in taking the case from the jury.

The judgment will be affirmed.