# WALLACE PARKER

## *v.*

## FISHER, FULLER & Co.

1. GENERAL VERDICT—*its effect.* A general verdict is an answer to all the counts of a declaration where the general issue was plead to all. Hence, a verdict for one thousand dollars, comprehends the principal sum sued for, and the interest on that sum, if the interest was specially claimed in a separate count.

2. In such a case, the legal effect of such a verdict is, that taking into consideration the claims of the plaintiffs, as set forth in all the counts of their declaration, they are entitled, upon the whole, to one thousand dollars and no more ; and such a verdict is good though it does not specially dispose of a count for interest.

3. MONEY RECEIVED BY ONE FOR THE USE OF ANOTHER AND NOT PROPERLY APPLIED—*liability therefor.* Where a party has received money for a particular purpose, and fails to apply it to that purpose, he is liable in assumpsit for money had and received, to the persons from whom he received it Hence, where P., a warehouseman, had received several packages of money from F., and this money was sent to P. for the use of B., and at the request of B., and P. did not account for a package of one thousand dollars, F. was entitled to a judgment in assumpsit for the sum not accounted for.

4. And, in such a case, where the evidence showed that P. was not only a warehouseman but was a purchasing agent for F., he could not withhold the money from the person to whom F. owed it, and thus defeat an action by F., in assumpsit, for money had and received, on the ground that he was a mere gratuitous bailee.

5. It is also true that, in such a case, B., to whom the money should have been paid by P., could maintain an action against him for the recovery of it, though a recovery by one would be a bar to an action by the other.

6. INSTRUCTION—*must be based on the evidence.* An instruction which does not require the jury to believe "from the evidence" the facts assumed in it, is

objectionable, even if the law in the instruction is correctly stated; but this court has often declared that, where an erroneous instruction has been given, and still, on the whole, it appears that substantial justice has been done, the judgment will not be reversed.

7. DEFECTIVE VERDICT—*may be made the foundation of a good judgment.* Where, on the whole record, the court can see that injustice has not been done a defendant, it would be going too far to deprive a plaintiff of a recovery for even less than he was entitled to, upon no better ground than the informality of a verdict, so, where a sealed verdict was "for the plaintiffs for $1,000 *and interest*," and the jury had dispersed, it was not error to allow the plaintiffs to remit all of said verdict except $1,000.

APPEAL from the Circuit Court of Scott county; the Hon. D. M. WOODSON, Judge, presiding.

This was a suit which was commenced August 1, 1864, in assumpsit by the appellees against the appellant. The declaration contained three counts. The first for money had and received; the second upon an account stated, and the third was for interest. The trial in the court below resulted in a judgment for the plaintiffs there, the appellees here, for one thousand dollars.

The evidence shows that in October, 1863, Wallace Parker was a warehouseman in Naples, and Joseph Fisher and the other appellees were buying corn there for shipment to St. Louis, and doing business themselves at Jersey Landing. In the fall of that year, the appellees bought a large lot of corn at Naples of one F. Brockmire, and made an arrangement with him that they were to send the money to him by the steamboat, "care of Wallace Parker." The money was afterward sent from St. Louis, by J. G. Greer & Co., as commission merchants, by direction of appellees, in sealed packages and all directed to "Wallace Parker," except one package of $1,600, which was directed to Mr. Brockmire, care of Wallace Parker. The dates and amounts and manner of sending, as follows:

Oct. 27, $1,000, by the packet "Nellie Rogers;" Oct. 31, $1,000, by the same boat; Nov. 9, $1,000, by the same boat; Nov. 14, $1,000, by the same boat; Nov. 21, $1,600, by the same boat, but directed to Brockmire, care of Parker; Dec. 10,

$6,000, by express. The total amount of the money sent was $11,600. The clerk of the boat delivered to Parker all the packages which were sent by the boat, and understood from both parties that all the money sent was to pay Fred. Brockmire for corn bought of him by plaintiffs. Part of the evidence for the plaintiffs was an account commencing, " Messrs. Fisher, Fuller & Co., in account with Wallace Parker," and admitted by Parker to be in his handwriting. This account is indorsed " F. Brockmire's bill, Dec. 12, 1863." It consists of a bill of items for labor, and sacks, and twine, express charges, corn, storage, etc. The first item is dated Oct. 28, 1863, and the last Dec. 16, 1863. The main charges are Dec. 15, for corn at fifty and sixty cents a bushel. These amount to $9,469.40. The same day there is a charge of $193.94 for storage of corn. Finally, the charges against the plaintiffs end Dec. 16, with an item of " cash paid Mr. Pickard, $827.11." The whole amount charged is $10,600, of which $10,490.45 is formed by the corn, storage and cash, and the balance is made up of a large number of small items of the character above indicated. On the other side, that account credits " Fisher, Fuller & Co., by cash paid to F. Brockmire," in the following dates and amounts : Oct. 28, $1,000; Nov. 2, $1,000; Nov. 16, $1,000; Nov. 23, $1,600; Dec. 10, $6,000; total, $10,600.

The plaintiffs below claimed that they had sent to Parker a thousand dollars more than he had accounted for, and this suit was brought to recover that sum, and the interest. The case was given to the jury, March 14, 1865, with an agreement by both parties that the jury might seal their verdict, when they should agree upon one, deposit it with the clerk and disperse. On the meeting of the court next morning, the clerk handed the sealed verdict to the court, the calling of the jury was waived by both parties, and the court read the verdict in the absence of all the jury.

The verdict was in these words : " We, the jury, find a verdict for the plaintiffs for the sum of one thousand dollars and interest." Plaintiffs moved to have the jury recalled and the case recommitted, which motion was overruled. Plaintiffs

then asked for leave to remit all of the verdict except one thousand dollars, and asked a judgment for that amount. The court, against the exception of the defendant, allowed the motion and judgment was so rendered. Motions by the defendant for a new trial and to set aside the verdict were overruled, and he now prosecutes this appeal.

Mr. H. J. Atkins, and Messrs. Morrison and Epler, for the appellant.

Mr. Albert G. Burr, for the appellees.

Mr. Justice Breese delivered the opinion of the Court:

This was an action of assumpsit in the Circuit Court of Scott county, brought by Joseph Fisher, Edmund M. Fuller and Philander Pickard, a firm doing business under the name of Fisher, Fuller & Co., against Wallace Parker.

The declaration contains three counts, the first for money had and received by the defendant of the plaintiffs; the second for money found due on an account stated; and the third count for interest for the forbearance and use of divers sums of money.

The general issue was pleaded and a trial by jury. It was agreed by the parties that the jury might seal their verdict, deposit it with the clerk and separate.

On the following morning, at the meeting of the court, a sealed verdict, left with the clerk, was delivered to the court, and the parties being asked if they wished the jury called, and replying in the negative, the court opened and read the verdict in the absence of the jury, which was as follows: "We, the jury, find for the plaintiffs for one thousand dollars and interest." The plaintiffs thereupon moved the court to have the jury called and the case recommitted to them, which motion the court denied. The plaintiffs then moved the court for leave to remit all of the verdict except one thousand dollars, and to withdraw all claim for interest, and that judgment might then be entered on the verdict for one thousand dollars.

This motion the court allowed, and the defendant excepted, and thereupon entered a motion for a new trial, assigning as a reason that the verdict was contrary to the evidence, and because the court gave improper instructions to the jury for the plaintiffs, and because of allowing plaintiffs' remittitur, and because the verdict was not entire, and a finding on all the issues in the case.

The court denied the motion and rendered judgment for one thousand dollars, to all which the defendant excepted and appeals to this court, and assigns this action of the Circuit Court as error.

Upon the last point made, the general issue was to all the counts in the declaration, and a general verdict is an answer to all the counts. A verdict for one thousand dollars would comprehend the principal sum sued for, and the interest on that sum, if the interest was specially claimed in a separate count. It is a finding to the effect that, taking into consideration the claims of the plaintiffs as set forth in the three counts of the declaration, they are entitled, upon the whole, to one thousand dollars, and no more. This is the legal effect of the verdict, and is a legal finding on the only issue presented by the pleadings, for there was but one issue, and that was, was the defendant indebted to the plaintiffs by reason of any agreement, promise or undertaking of his, and if so, in what amount? A verdict finding one thousand dollars is responsive to this issue, without disposing specially of the count for interest.

Now, as to the points in their order: The first is that the verdict is contrary to the evidence.

The facts are that defendant was a warehouseman at Naples, and had bought and stored corn on plaintiffs' account to a large amount, and that plaintiffs sent him money by the boat "Nellie Rogers," at different times in packages of one thousand dollars, except in one case, when a package containing sixteen hundred dollars was sent him, and another package sent by express containing six thousand dollars, in all the sum of eleven thousand six hundred dollars, all of which the defendant received and accounted for, except the sum of one thousand

dollars. It appears that these sums were sent to defendant at the request of one Brockmire, for whose use they were, and of whom the plaintiffs had made large purchases of corn.

It is insisted by the defendant, that, on this state of facts, the money when sent to him was the money of Brockmire, and if defendant did not pay it over to Brockmire he alone can sue for it; that defendant's liability is alone to Brockmire and not to the plaintiffs.

The testimony of Greer Brothers, who composed the business firm of J. G. Greer & Co., at St. Louis, and who, it would seem, were the consignees of the corn shipped by plaintiffs from Naples, shows that they sent, at the request of plaintiffs, to the defendant at different times, eleven thousand six hundred dollars, which plaintiffs owed to Brockmire for corn they had purchased of him. It was by Brockmire's request the money should be sent to the defendant. Five thousand six hundred dollars were sent in separate packages at different dates by the steamboat "Nellie Rogers," and six thousand dollars in another package by express, all which came to the hands of the defendant. In his account current rendered to the plaintiffs, he charges himself with ten thousand six hundred dollars and accounts for that sum, leaving one thousand dollars unaccounted for, which is the matter in controversy.

The proof shows that but one package of money, and that for $1,600, was addressed directly to Brockmire, care of defendant, about which there is no controversy. The other packages contained, each of them, $1,000, and were directed to the defendant, and came to his hands. It is one of these which is the subject of this action, and for which he has not, in his account current, given the plaintiffs credit. As to the claim he was merely a gratuitous bailee, his account current shows the contrary. It shows he was the purchasing agent of the plaintiffs, and their warehouseman, charging them with storage. The whole transaction, as established by the witnesses, and by the defendant's account current, shows he was not a mere bailee, but a purchasing agent and warehouseman, as a commission and forwarding merchant, doing business on the

terms usual and customary with persons engaged in such business.

But if he was a mere gratuitous bailee, had he a right to withhold the money from the person to whom the plaintiffs owed it, and appropriate it to his own use? We think not. In whatsoever relation he stood to the plaintiffs the fact is shown that he has received their money for a particular purpose, and has failed to apply it to that purpose. This is a fraud, for which the defendant is justly chargeable in an action for money had and received.

The next point in order is giving improper instructions for the plaintiffs. The instructions are as follows:

" The court instructs the jury, in behalf of the plaintiffs, that if they believe from the evidence that Fisher, Fuller & Co. sent at various times sums of money amounting in all to $11,600, to be expended for the benefit of the plaintiffs, and that Parker has failed to account for any given quantity of said money, the jury shall find a verdict for the plaintiffs for such sum unaccounted for, not exceeding $2,000.

" That, even if they believe that defendant agreed, without compensation, to receive money of plaintiffs as their agent, and not as the agent of Brockmire, and pay out the same for their benefit, he is still held to an honest account for all moneys so received; and if he has failed, even under such facts, to account for any portion of money so received, the plaintiffs are entitled to judgment for such amount.

" The court instructs, for plaintiffs, that if Parker has rendered to plaintiffs his account current, accounting therein in his own name for all but one thousand dollars of the money received, he cannot legally avoid accounting for the remainder by claiming that some other than himself was bound to make such account.

We perceive nothing objectionable in the first of these instructions, as may be inferred from what has already been said in disposing of the first point.

It can make no difference in the plaintiffs' right to recover, if this money was to be applied to the payment of Brockmire, if the defendant did not so apply it. Although Brockmire

might possibly have sued for and recovered the amount, the plaintiffs' right to sue is unquestionable, and a recovery by them would be a bar to a recovery by Brockmire for the same money.

The second instruction not being based on the evidence, or rather the jury not being required to believe "from the evidence," that defendant agreed, etc., is objectionable under all the rulings of this court on that point, yet the matter of law stated in it cannot be denied. No matter how the money came to the hands of the defendant, if it was the plaintiffs' money the defendant should account for it.

The third instruction withdraws no question from the jury, upon which they were required to pass. The defendant was estopped by his own act, by his own account rendered, from denying responsibility to the plaintiffs. By rendering an account he admitted the right of the plaintiffs to an account, and in rendering it, he should have made it full and satisfactory.

On the principle so often declared by this court, that although an erroneous instruction may have been given, yet if, upon the whole record, it appears substantial justice has been done, the court will not reverse a judgment, this judgment will stand notwithstanding the omission in the second instruction. The other instructions fairly stated the case, and no injury could have resulted to the defendant from the wording of the second instruction.

Another question remains to be considered, and that is the action of the court on the verdict.

The third count of the declaration, was a count for interest on the money claimed to be due. The amount of interest rested in computation and could readily be ascertained in dollars and cents, and it was the duty of the jury to compute it. The verdict was sealed, and the jury dispersed. The verdict is defective as is admitted by the appellee's counsel, or, whether admitted or not, it is manifestly defective in not finding the amount of the interest by way of damages.

We have found no case precisely on the point made by appellant. The cases cited, *Hinckley et al.* v. *West*, 4 Gilm. 138,

and *Wilcoxon* v. *Roby*, 3 id. 475, merely show that after a jury is discharged, they cannot be reassembled, and their verdict amended. Now the record does not show a technical amendment of this verdict. The most that can be urged is, that it was uncertain and unintelligible so far. as the interest was involved. In other respects, the verdict was responsive to the issues found on all the counts.

We are inclined to hold that this portion of the verdict, " and the interest," may be rejected as unintelligible, and the verdict recorded for that part which is good, on the principle " *utile per inutile non vitiatur.*" What rule is there to prevent a party from waiving a portion of the finding of a jury ? Why should the defendant complain ? It is to his advantage that a verdict was entered for less than the amount really due. When, on the whole record, we see that injustice has not been done a defendant, it would be going too far to deprive a plaintiff of a recovery for even less than he was entitled to upon no better ground than the bare informality of a verdict.

In the case of *Carter* v. *Lewis et al.* 29 Ill. 500, this court said a decree " for seven hundred dollars and upward," was good for the certain sum of seven hundred dollars, and void for the residue.

There being no error in the record, the judgment is affirmed.

*Judgment affirmed.*