### Mark A. Barton v. Minnie Creek Drainage District.

#### Gen. No. 4,153.

1. DRAINAGE DISTRICT—*corporate character of.* A drainage district is a " voluntary quasi-corporation " organized for a special and limited purpose.

2. BOND—*when drainage district is not liable upon.* A drainage district is not liable upon a bond duly issued by it, where the property within the district has been once assessed, to pay such bond and such assessment paid to the proper officials, and expended by them for other purposes. The remedy of the owner of such bond is upon the bonds of the officers who wrongfully appropriated such money to other purposes.

Action of assumpsit upon drainage district bond. Appeal from the Circuit Court of Kankakee County; the Hon. JOHN SMALL, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed March 14, 1904.

DANIEL H. PADDOCK, for appellant.

W. R. HUNTER, for appellee.

MR. JUSTICE FARMER delivered the opinion of the court.

Appellee was, in 1893, duly organized as a drainage district, under the act of the General Assembly entitled "An act to provide for the construction, reparation and protection of drains, ditches and levees across the lands of others for agricultural, sanitary and mining purposes, and to pro-

vide for the organization of Drainage Districts," approved and in force May 29, 1879, and acts amendatory thereto.

A tax or assessment was levied against the lands in the district to pay for the improvement, which was all paid by the landowners in cash, except $5,323.93. This amount was borrowed on bonds of the district, which were duly authorized to be, and were issued and disposed of to various parties.

Appellant is the owner of bond number eleven which is for $500, bearing interest at the rate of six per cent per annum, and matured in January, 1900. Payment not having been made, he sued appellee in the Circuit Court of Kankakee County.

Appellee filed two special pleas. The first is as follows: "And for a further plea to the said first count of said declaration, said defendant says *actio non*, because it says that this defendant is a quasi-public corporation organized and existing under and by virtue of an act of the General Assembly of the State of Illinois, entitled 'An act to provide for the construction, reparation and protection of drains, ditches and levees across the lands of others, for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts,' approved and in force May 29, 1879, and acts amendatory thereof. Defendant further avers, that after this defendant was organized as such drainage district it levied a special assessment amounting to the sum of $8,968.23 upon all the lands within said district to be benefited by such contemplated improvement, which was duly confirmed by the County Court of said county, and thereupon part of the owners of certain lands so assessed paid all the assessments so levied upon said lands, forming a part of said district, amounting to the sum of $3,644.30, leaving the sum of $5,323.93 so assessed against said lands unpaid; that afterwards, to wit, January 8, 1894, said County Court duly entered an order in said cause, duly authorizing the commissioners of this defendant to borrow money in the name of this defendant to the full amount of the said en-

tire assessment roll, and to issue bonds therefor, due in three, four, five and six years from January 8, 1894, to draw interest at the rate of six per cent per annum until paid; that afterwards, to wit, March 8, 1894, this defendant issued said bonds to the amount of $5,300, and sold the same as above alleged. This defendant further avers that all the said special assessments so levied as aforesaid and confirmed by said County Court, to wit, said assessment of $8,968.23, together with six per cent annual interest on said bonds, has been collected by the commissioners of this defendant and paid to the duly appointed and qualified treasurer of this defendant district, according to law. This defendant further avers that afterwards, to wit, January 8, 1900, and before the commencement of this suit, all of said moneys so collected and paid into the treasury as aforesaid, were and had been paid out by the treasurer of said district, and that at the time when said bond became due and payable, and from thence hitherto, there was and has been no money or property of any kind in the treasury of said defendant or under its control, or in the possession or under the control of the treasurer of said district, or its commissioners; by means of which said premises this defendant says it is not liable to said plaintiff upon said bond, and this it is ready to verify, wherefore it prays judgment, if the plaintiff should have or maintain his aforesaid action against it." The second plea is substantially the same, except it alleges that before the bond sued on became due, the assessments levied against the lands for its payment " had been collected by the treasurer and commissioners of said district and unlawfully applied by them to the payment of other alleged claims against said district," and that when the bond became due, and from thence hitherto, there has been no money or property in the treasury of defendant or under its control.

Plaintiff demurred to both special pleas. Defendant withdrew the general issue, and the court overruled the demurrer to the special pleas. Plaintiff electing to abide by his demurrer, judgment was rendered in favor of defendant for costs and plaintiff appeals.

It will be seen from the plea above set out in full, that no question was raised as to the regularity of the organization of defendant as a drainage district, or of the bond sued on having been lawfully issued, or of the legality of the assessments made against the lands for its payment. In fact, all these are conceded to have been regular and lawful. The defense is that the money levied and collected in a lawful manner for the payment of the bond, has been expended for other purposes, and no fund or money is now in the treasury, or under the control of the defendant to pay it. Defendant insists that under these circumstances no judgment can lawfully be rendered against it in this suit. The Circuit Court so held and rendered judgment for defendant for costs. We think this was correct.

It is unnecessary to take up and discuss the various steps and proceedings in the organization of drainage districts provided by statute, for no question in this regard is raised. The statute confers power and authority upon the commissioners to raise money by special assessments against the lands to pay for the work. The assessment is made against each tract of land according to benefits, and its proportionate share of the estimated cost of the work. These assessments may be made payable " in installments of such amounts, and at such times, as will be convenient for the accomplishment of the proposed work, or payment of bonds that may be issued," and are made a lien on the lands assessed until paid. Starr & C. Stat., par. 55, chap. 42. By section 38 of the act under which defendant was organized (Starr & C. Stat., par. 69, chap. 42) the drainage commissioners are authorized to " borrow money not exceeding ninety per cent of the amount of assessment unpaid at the time of borrowing * * * and may secure the same by notes or bonds bearing interest at the rate of not exceeding six per cent per annum, and not running beyond one year after the last assessment or installment of assessment on account of which the money is borrowed shall fall due, which notes or bonds shall not be held to make the commissioners personally liable for money borrowed, but *shall constitute a lien upon the*

*assessment for the repayment of the principal and interest thereof.*" The plea alleges that all the assessments against the lands in the district and which were pledged for the payment of the bonds issued, had been collected by the commissioners and the money expended for other purposes before the bonds sued on became due. The demurrer admits the allegations of the plea to be true. If then the plaintiff is entitled to a judgment against the defendant district, how is its payment to be provided for?

A drainage district is held to be a " voluntary quasi-corporation" organized for a special and limited purpose. "Its powers are restricted to such as the legislature has deemed essential for the accomplishment of such purpose, and it is only authorized to raise funds for the specific object for which it is formed, and can do that in no other mode than by special assessments upon the property benefited, which can in no case exceed the benefits to the lands assessed. No funds or means are furnished such districts with which to pay damages occasioned to individuals by the tortious or unauthorized acts of the drainage commissioners, and there is no express statutory requirement that it shall be liable for such torts." Elmore v. Drainage District, 135 Ill. 369. There being no other mode by which the corporation can raise money except by special assessments against the property benefited, and the property within the defendant district having been once assessed to pay the bond sued on, and having paid that assessment to the proper officials, in our opinion defendant is discharged from any further liability to the holder of the bond, and his remedy, if any, is against the officers who wrongfully appropriated the money to other purposes. There is no means provided by law for raising money to pay the judgment against defendant if one should be awarded plaintiff. The bond was issued to borrow money to pay the cost of the work and made a lien on the assessments levied against the property for its payment. The owners of the property have paid these assessments to the proper authorities and there is no power or authority in the commissioners to again assess the property

for the same purpose.   They cannot even create an indebtedness against the district without having first made an assessment and secured its confirmation in the mode and manner provided by the statute.   Winkleman v. Drainage District, 170 Ill. 37.   Nor can they borrow money in excess of the amount of the assessment unpaid.   Badger v. Drainage District, 141 Ill. 540.

It appears to us that while the facts were different, the principles announced in the Badger case are decisive of this case.   In that case, after the organization of the district and confirmation of the assessment, the commissioners made an agreement with Badger & Son, who had a dam across Inlet Creek, to pay them $1,700 to remove it, and to levy an assessment against the lands in the district to raise the money. Badger & Son removed the dam as agreed and the commissioners drew and delivered to them seventeen orders for $100 each.   The commissioners then made an assessment on the lands in the district to raise the $1,700, but its collection was enjoined, and no money raised therefrom.   The orders were presented to the treasurer for payment, which was refused because there was no money in the treasury belonging to the district, and suit was then brought against the district to recover the amount of the orders.   The Supreme Court held there could be no recovery because the commissioners had no power to incur the indebtedness against the district, and no means were provided by law whereby money could be collected from the property owners in the district, for the payment of such claim.   It was there said: "Moreover, to entitle appellants to a judgment, it must appear that they have a legal claim, not merely as against the commissioners, but as against the real estate, within the district benefited by the improvement, for if judgment be rendered it can only be satisfied by a special assessment upon that property.   It cannot therefore be conclusive as to the right of appellants to recover, merely to show that the commissioners as individuals have done or said that which admits the right of appellants, for they cannot by their acts and conduct, enlarge their powers over the property in the dis-

trict, without the knowledge and consent, express or implied, of the owners of that property."

It is insisted that plaintiff as owner of the bond had no control over the collection and disbursement of the money assessed against the lands for its payment, and that it would be a great injustice to an innocent party to hold that he cannot recover against the district. With equally as much force can it be said that the property owners had no control over the disbursements of the assessments and having once paid the money to the proper authorities provided by law to collect it for, and pay it to the bondholders, ought not now be taxed again for the same purpose. The question, we think, is analogous to that of a municipality issuing warrants in anticipation of taxes already levied, to provide funds for defraying the ordinary and necessary expenses of the corporation. In such cases it has been held that the warrant does not constitute a liability of the municipality. In City of Springfield v. Edwards, 84 Ill. 626, it was said: "Where a warrant or order payable from a specific appropriation of a tax levied, but not yet collected, is accepted in exchange for services rendered or to be rendered, or for materials furnished or to be furnished, so that there is in fact but the exchange of one thing for another, the duty remains for the proper officers to collect and pay over the tax in accordance with the appropriation—but obviously, for any failure in that regard, the remedy must be against the officers and not against the corporation, for, otherwise, a contingent debt would in this way be incurred by the corporation." This has been approved in Law, et al., v. The People, 87 Ill. 385; Faller v. Heath, 89 Ill. 296; Commissioners of Highways v. Jackson, 165 Ill. 17.

While the law requires the holder of the bond to look for payment to the taxes provided for that purpose and against which it is made a lien, he is not without remedy if the officers charged with the collection and proper disbursement of the money, misappropriate it. Section 32 of the act under which defendant was organized (Starr & C. Stat., par. 62) provides that "The commissioners appointed by

virtue of this chapter shall not collect or receive any money for the purposes therein specified, until they shall have given bond payable to the People of the State of Illinois, for the use of all persons interested, in a sum not less than twice the amount of the assessment for benefits, payable in any one year, or which may come into their hands or under their control during such year, with such security as shall be approved by the judge of the court, conditioned for the faithful application of all moneys that may be received by them as such commissioners," and they are required to renew such bond on or before September 15, each year. Section 29 of the same act (Starr & C. Stat., par. 59,) makes it the duty of the commissioners after the confirmation of the assessment roll, and before any part of it has been collected, to appoint a treasurer who shall not be one of their number. Such treasurer is required to "execute a bond to the People of the State of Illinois, for the use of all persons interested, in a sum not less than twice the amount of assessments that may be in his hands during his term of office, with such sureties as may be approved of by the judge of said court, conditioned for the faithful performance of his duties as treasurer of said drainage district, and that he will safely and faithfully account for all money that by virtue of his said office shall come to his hands." These bonds appear to us to afford ample protection to the bond owners.

It was unlawful for the commissioners and treasurer to use money collected on assessments pledged for the payment of the bond sued on, for any other purpose, and when they did so use such money, it seems clear that plaintiff's remedy, if any, is in an action on those bonds or some of them.

Believing the judgment of the Circuit Court in overruling plaintiff's demurrer and rendering judgment for defendant was correct, that judgment is affirmed.

*Affirmed.*