# Frances K. Schoden, Appellant, v. John Schaefer et al., Appellees.

## Gen. No. 18,370.

1. DRAINAGE, § 56*—*when officers of district jointly liable for misapplication of money raised to pay bonds.* The treasurer of a drainage district and the drainage commissioners are jointly liable in an action for money had and received brought by holder of bonds issued by the drainage district under R. S. 1911, p. 943, J. & A. ¶ 4340, to recover the face value of the bonds and interest thereon for the misapplication of taxes levied and collected for the payment of such bonds, where the treasurer upon orders of the commissioners paid out such fund for purposes other than the payment of the bonds.

2. DRAINAGE, § 54*—*when treasurer of district personally liable for misapplication of funds.* Instalments of taxes levied and collected by the drainage commissioners to pay bonds issued by the district are trust funds to be used in the payment of the bonds only, and the treasurer of the drainage district is personally liable for misapplying such funds, though he paid them out on orders of the drainage commissioners.

3. DRAINAGE, § 56*—*liability of district for misapplication of funds raised to pay bonds.* Where officers of a drainage district

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

misapply funds collected to meet payment of bonds issued by the district, the district is not liable for any part of its funds so misapplied. For such funds the bondholders must look solely to the officers who misappropriated them.

4. DRAINAGE, § 128*—*power to levy an assessment for misapplied funds.* Where funds levied and collected for the payment of bonds issued by a drainage district have been misapplied, no second assessment can be levied and collected to pay the same. A second assessment cannot be levied to meet a past indebtedness.

5. DRAINAGE, § 164*—*when officers of district misapplying illegal taxes collected not liable to refund to taxpayers.* Officers of a drainage district misapplying funds raised by an illegal assessment are not liable to the taxpayers to refund the same where the taxpayers voluntarily paid such taxes with full knowledge of all the facts concerning them.

6. ACTIONS, § 15*—*when demand not necessary before suit.* Demand before suit not necessary to maintenance of an action against officers of a drainage district for misapplication of taxes levied and collected to pay bonds issued by the district.

7. ASSUMPSIT, ACTION OF, § 44*—*nature of action for money had and received.* Action for money had and received for the use of plaintiff is an equitable action and lies for money had and received by the defendant which in equity and good conscience he should not retain. The law in such case implies a promise to pay although there is no privity between the parties. The alleged contract is fictitious and the right to recover is governed by principles in equity.

8. ASSUMPSIT, ACTION OF, § 53*—*when lies against a person receiving money for the use of another.* Where a party receives money for a particular purpose and fails to apply it to that purpose, he is liable in *assumpsit* for money had and received to the person to whom the money should have been paid.

9. OFFICERS, § 52*—*when public officer cannot attack validity of bonds in action for misapplication of funds raised to pay the bonds.* In an action against the officers of a drainage district to recover against them personally for misapplying funds raised to pay bonds, the officers cannot avoid their liability by alleging and proving the illegality of the bonds.

10. OFFICERS, § 54*—*when public officers personally liable for failure to perform duties.* Where public officers fail to perform a public duty and thereby cause an injury special and peculiar to such individual, an action will lie against them personally; and if the injury is caused by the joint action of the officers, a joint action may be maintained either in the case of a breach of a contract express or implied or in the violation of a duty whereby a tortious injury is inflicted.

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

11. Appeal and error, § 1672*—*when objection for misjoinder of counts is waived.* Objection that a special count in a declaration is in *tort* and that such count cannot be joined with the common counts or any count in *assumpsit* is waived where such objection does not appear to have been urged in the trial court and the general issue in *assumpsit* was pleaded to such plea.

Appeal from the Superior Court of Cook county; the Hon. Joseph H. Fitch, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Reversed and remanded. Opinion filed December 31, 1913.

Adams, Bobb & Adams, for appellant; G. L. Wire, of counsel.

Gail E. Deming and Louis J. Pierson, for appellees.

Mr. Justice Duncan delivered the opinion of the court.

February 27, 1909, Frances K. Schoden, appellant and owner of certain bonds issued by Drainage District No. 1 of the Town of New Trier, Cook County, Illinois, brought this action against appellees to recover $1,000, the face value of said bonds and interest thereon. The trial of the cause, and of three other similar suits hereinafter named and consolidated by agreement with this case for trial in the lower court was had before the court without a jury and on February 3, 1912, the court found the issues in favor of appellees in all the cases and entered judgment accordingly.

The declaration in this case consists of a special count and the common counts in *assumpsit,* including the count for money had and received by appellees to and for the use of appellant. The special count sets forth, in substance, that on December 27, 1902, the regularly elected, qualified and acting drainage commissioners of said drainage district passed resolutions in due form authorizing and directing the issue of one hundred and twenty bonds of said district in the principal sum of $50 each, payable with six per cent. in-

terest, forty of said bonds to be marked "Series A" and payable December 1, 1903, forty thereof to be marked "Series B" and payable December 1, 1914, and forty thereof to be marked "Series C" and payable December 1, 1905, pursuant to an Act of the General Assembly of Illinois in force June 15, 1895, for the purposes of constructing a system of drainage in said district, the principal and interest being payable from the receipts of a special assessment which was levied by said commissioners against the property in said district to pay for said improvements; that appellant is the owner of twenty of said bonds of "Series C" and the last interest coupons of three dollars each attached to them and which were executed and delivered by said commissioners, February 16, 1903; that thereafter appellee, John Schaefer, was the selected and qualified treasurer of said district and as such treasurer did receive into his hands the moneys levied and collected to pay said bonds; that the other appellees were after the execution and delivery of said bonds the duly elected, qualified and acting drainage commissioners of said district at the times of the receipt of said moneys; that notwithstanding their duty in the premises to apply said moneys to the payment of said bonds, nevertheless said appellees as said commissioners did then and there authorize and direct said appellee, Schaefer, as treasurer, aforesaid, to pay out and expend said moneys to other parties for other purposes than the payment of the bonds and for which payment said moneys were levied and collected, and said Schaefer, as treasurer, did pay out said moneys to other persons for purposes other than the payment of said bonds, although appellant after the maturity of said bonds demanded and requested appellee to pay said bonds according to the tenor and effect thereof, but appellees have refused to pay the same, or the interest thereon, or any part thereof, etc.

To the common counts appellees filed the general issue in *assumpsit*. Appellees, Schneider, Laubach

and Roemer, jointly filed the general issue in *assumpsit* to the first count. Appellee, Schaefer, filed the general issue in *assumpsit* to the first count and also a special plea, in substance, that at the times alleged in said declaration he was the duly appointed and qualified treasurer of said drainage commissioners and that he received said moneys as such treasurer; that in his said official capacity he paid out said moneys in good faith for the uses and benefit of said drainage district under and in acordance with the order of said duly elected and qualified drainage commissioners, and only upon orders duly signed by their chairman and countersigned by their clerk, and has not now, and had not at the time of the alleged demand upon him, any of said moneys as such treasurer, and did not at any time promise to pay appellant said moneys or any part thereof. The court sustained a demurrer to said special plea, and appellee, Schaefer, elected to stand by his said special plea. Appellees, Schneider, Laubach and Roemer, then filed a further special plea duly sworn to denying joint liability, on which issue was taken.

The three other suits against said appellees were brought on certain other of said bonds executed by said drainage commissioners, one by *Helen Sesterhenn,* executrix of the last will of Maternus Schaefer, deceased, another by *Egidius Meyer,* and the third by *Anna Huerter,* all of which are here on appeal, and are in this court numbered respectively 18,371, 18,372 and 18,373 (*supra* p. 472), and were all consolidated for hearing by order of this court with the case of appellant, Schoden, and in all three of said causes it is stipulated that the judgment of this court in this, the *Schoden* case, shall be the judgment of this court in all of said other three causes.

From the further stipulations of the parties to said four suits and the evidence offered it clearly appears that the said special count of the declaration was proved and that said drainage district was organized

October 2, 1902, under the provisions of the Farm Drainage Act for a system of combined drainage, which provisions begin with paragraph 85 of chapter 42 of Hurd's Revised Statutes, 1911, p. 901. (J. &. A. ¶ 4485). Under the provisions of said act the commissioners of highways of said township, Fred Schramm, Ignatz Schweiger and Paul Nanzig, acted as drainage commissioners for the district to March 16, 1903, when appellees, Schafer, Schneider and Laubach, were elected and qualified as drainage commissioners and served as such to March 22, 1904. Casper Roemer then succeeded John Schaefer as such commissioner, but died shortly after his election, and on June 4, 1904, appellees, Schaefer, Schneider and Laubach, were the duly elected and qualified drainage commissioners of said district and served as such to and including March 10, 1906, but were not at any other period of time altogether the acting drainage commissioners of the district. Appellee, Schaefer, was the duly elected and acting treasurer of the district from the date of its organization to and including September 29, 1911, and Gangolf Sesterhenn was its clerk and clerk of said township for the same time. On December 4, 1902, by resolution, the drainage commissioners estimated and stated the cost of the entire drainage system as follows:

For clearing and constructing ditches, etc.,.$ 7,200.00
For damages to lands taken for drains......    800.00
For engineer's fees and assistant's compensation .............................    350.00
For compensation to drainage Commissioners, treasurer and clerk ................    700.00
For incidental expenses...................    200.00
For Court Costs and Attorney fees.........    750.00

Total .............................$10,000.00

The commissioners caused to be made a classification of the lands in the district and a levy and assessment of $10,000, apportioned as aforesaid, for the pur-

pose of making the said improvement as provided by plans and specifications, $2,000 of which sum was imposed against the commissioners of highways of said township by reason of benefits to the highways thereof, and the other $8,000 was levied and assessed against the landowners of the district. Upon a petition of a majority of the landowners, the levy and assessment of $8,000 was by resolution of the drainage commissioners on December 27, 1902, divided into four equal instalments of $2,000 each, one instalment payable forthwith, and the other three instalments were payable respectively, December 1, 1903, December 1, 1904 and December 1, 1905, all drawing six per cent. interest. To secure the deferred instalments three series of bonds were determined upon and were to be known and described as set forth in appellant's special count aforesaid, and were payable at the State Bank of Evanston, Cook county, Illinois. The said bonds were prepared accordingly and "Series B" and "Series C" thereof were sold, and appellants in said four causes are conceded to be owners of certain of the bonds sold as follows: Frances K. Schoden, twenty bonds of "Series C," numbered from 1 to 20 inclusive, of the face value of $1,000; Egidius Meyer, twelve bonds of "Series C," numbered 29 to 40 inclusive, $600; Helen Sesterhenn, executrix, twenty bonds of "Series B," numbered 1 to 20 inclusive, $1,000; Anna Huerter, twenty bonds of "Series B," numbered 21 to 40 inclusive, $1,000. William Kossow was shown to have purchased the other eight bonds of "Series C," $400, which are also unpaid, but not litigated in said suits. The forty bonds known as "Series A" were never sold by the commissioners, it being considered unnecessary, because so many landowners elected to and did pay in cash all four of the instalments of taxes, so far as levied and assessed against their lands. Of the $4,000 in bonds issued by the drainage district, all of which were issued under the Act of June 15, 1905 (Hurd's Statutes, 1911, p. 943, J.

& A. ¶ 4340), no part of the principal thereof has ever been paid, as shown by the evidence, and the interest thereon has been paid up to December 1, 1907. The treasurer's reports in evidence show the receipts of the district to be as follows:

To July, 1906, from land owners on instal-
ment taxes ............................$5,409.73
Up to December, 1908, from the County Col-
lector and treasurer .................... 4,319.21
March 31, 1908, from the Town Collector..... 648.87
March 5, 1903, from the Commissioners of
Highways, assessment ................... 2,000.00
October 17, 1903, from the Commissioners of
Highways, on sewer pipes............... 1,000.00
December 1, 1904, from the Commissioners of
Highways ............................ 185.00
March 5, 1903, from sale of bonds and accrued
interest .............................. 4,040.00
September 5, 1903, from Charles Schuette,
donation to district ................... 25.00
May 30, 1904, from M. & St. P. R. R. Co., for
damage to pipes ...................... 6.58
October 21, 1904, from Fred Scheuber towards
catch basin ........................... 20.00

Total ...............................$17,654.39

No other levy for any purpose was ever made and collected by the said district, and the said total sum represents the total sum received by said district from all sources up to October 31, 1910. Of said total sum collected by said treasurer the sum of $11,578.01 was collected prior to June 4, 1904, or prior to the time appellees constituted the treasurer and board of drainage commissioners for said district. The total sum spent by the treasurer and former drainage commissioners up to June 4, 1904, was $11,524.05. Of said total sum the following amounts came into the appellee Schaefer's, hands as treasurer aforesaid from

June 4, 1904, to March 10, 1906, towit:

June 4, 1904, Balance not paid out..........$    53.96

Oct. 7, 1904, to Dec., 1904, 3d instalment taxes    674.91

Oct. 7, 1904, to Jan., 1906, 4th instalment taxes    617.46

Jan. 20, 1905, to Nov., 1905 from County
Treasurer ........................... 1,006.64

Aug. 3, 1904, to Aug. 7, 1904, 2d instalment
taxes ...............................    553.55

Dec. 1, 1904, from Highway Commissioners..    185.00

Oct. 21, 1904, from Fred Scheuber towards
catch basin ...........................    20.00

Total ...............................$3,111.52

During the same time, from June 4, 1904, to March 10, 1906, appellee, Schaefer, as treasurer, paid out, on order of the commissioners, the following amounts:

From October 8, 1904, to November 5, 1905, to
contractors for constructing drains, etc....$1,558.03

March 11, 1905, Hoffman Bros., lumber......    6.72

Jan. 5, 1905, to parties for cleaning ditch, G.
P. Av................................    31.00

Jan. 27, 1906, F. A. Windes as engineer ......    184.27

Jan. 18, 1906, R. W. Boddinghouse, as attorney    35.00

Jan. 3 to March 11, 1905, officers fees, Commissioners, clerk and treasurer...............    262.49

Dec. 8, 1905, Philip Doetch, Committee member ...............................    _ɔ.00

Jan. 20, 1905, John Hanberg, County Treasurer, percentage ......................    7.70

Jan. 3, 1905, and January, 1906, C. H. Bush,
printing reports ......................    22.00

Jan. 3, 1905, and April 1, 1905, Jacob Roemer,
for house of election...................    7.50

Dec. 1, 1904, and Jan. 18, 1906, to owners of
$4,000 of bonds, interest for 1904 and 1905..    480.00

Total ...............................$2,609.71

There was received by appellee, Schaefer, as treas-

urer of said district after March 10, 1906, the following accounts:

| | |
|---|---:|
| March 11, 1906, Balance not paid out.........$ | 501.81 |
| Sept. 18, 1907, from land owners, 4th instalment taxes ............................ | 181.66 |
| Sept. 18, 1907, from County treasurer........ | 350.00 |
| Dec. 23, 1907, from County treasurer........ | 470.95 |
| March 31, 1908, from Town Collector........ | 648.87 |
| Dec. 21, 1908, from County treasurer........ | 1,367.34 |

Total ................................$3,520.63

Subsequent to March 10, 1906, appellee, Schaefer, as treasurer of said district, paid out the following amounts on order of commissioners other than appellee commissioners towit:

| | |
|---|---:|
| July 16, 1906, to Aug. 16, 1910, for cleaning and repairing drains, etc.................$ | 477.40 |
| Oct. 30, 1909, paid for bridge on private lane | 40.37 |
| Dec. 12, 1906, to Oct. 30, 1909, Officers of District and bond for officer................. | 332.10 |
| Dec. 31, 1907, C. H. Bush for printing reports | 10.00 |
| Jan. 26, 1907, to March 31, 1910, for attorneys | 687.50 |
| Nov. and Dec., 1906, paid engineers ......... | 30.00 |
| Sept. 21, 1907, and Jan. 9, 1909, paid on $4,000 of bonds, interest for 1906 and 1907........ | 480.00 |

Total ...............................$2,057.37
Oct. 31, 1910, Balance in treasury...........$1,463.26

The several amounts collected by appellee, Schaefer, as treasurer, from the county treasurer, the "town collector" and from the commissioners of highways, except as above shown, are not designated by the treasurer's reports, and, therefore, it cannot be ascertained definitely from the evidence in this record how much thereof, if any, represents collections from the third and fourth instalments of taxes that were evidently levied for the purpose of paying the $4,000 of bonds and the interest thereon. For that reason also we cannot ascertain definitely how much of the third and

fourth instalment taxes were received by said treasurer prior to June 4, 1904, or subsequent to March 10, 1906, or between those dates. It may be assumed, however, that the $53.96 balance in the treasury, June 4, 1904, belonged to those funds as $1,184.60 of the third and fourth instalment taxes had been collected prior thereto and only the sum of $240 interest was paid on the bonds. The showing then as made by this record without contradiction is that during the whole time appellees were serving together as drainage commissioners and treasurer of said drainage district, June 4, 1904, to March 10, 1906, the treasurer received $1,346.33 of the taxes levied and collected to pay said bonds and only applied thereon the sum of $480 as interest for 1904 and 1905, leaving a balance of $866.33 that should have been applied to the payment of the principal thereof. Assuming that the balance of $501.81 in the treasury March 11, 1906, belongs exclusively to the funds collected to pay the bonds, it is clear that appellees by their joint action misapplied the sum of $364.52, and also that part of the $1,006.64 received by them from the county treasurer, if any, that was collected by the said treasurer on the third and fourth instalment taxes levied to pay said bonds. The evidence further shows that of the $10,000 estimated, appropriated and levied as the total costs to the district for the construction of the drains, etc., and for the expenses connected therewith, every item of that cost and expense, as above itemized by the commissioners, was overpaid prior to June 4, 1904.

The court properly held as legal propositions that the instalments of taxes levied and collected for the payment of the bonds held by appellant were trust funds to be used in payment of said bonds only; that appellee, Schaefer, became personally liable to appellant for misapplying said funds, although he paid them out by order of the drainage commissioners; and that the commissioners of the district were also liable to appellant in a proper action for wrongfully ordering their said treasurer to pay out said funds on other

obligations or claims against the district. The court also held that appellees were not jointly liable, and that an action of *assumpsit* will not lie against appellees jointly for the recovery by appellant of the funds so misappropriated. To the latter holdings of the court we cannot assent. It is the law, as argued by appellees, that in actions *ex contractu* the burden is on the plaintiff to establish his case of joint liability against all the defendants when joint liability is denied. *Griffith v. Furry,* 30 Ill. 251; *Cassady v. Trustees of Schools,* 105 Ill. 560; *United Workmen v. Zuhlke,* 129 Ill. 298; *Kingsland v. Koeppe,* 137 Ill. 344; *Powell Co. v. Finn,* 198 Ill. 567.

Appellees' counsel also contend that the first count of the declaration is in tort and that such a count cannot be joined with the common counts or any count in *assumpsit,* and that, therefore, appellant cannot recover in this case. No such contention appears to have been made in the lower court, and, besides, appellees pleaded the general issue in *assumpsit* to the special count, and thereby have waived the right to insist that said count is in tort, or that there is a misjoinder of counts. We deem it unnecessary to further consider the first count of the declaration, as we predicate our holding that appellant was entitled to a judgment in this case on the evidence under the common counts and particularly under the count for money had and received by appellees to the use of appellant. Where a party receives money for a particular purpose and fails to apply it to that purpose he is liable in *assumpsit* for money had and received to the person to whom the money should have been paid. *Parker v. Fisher, Fuller & Co.* 39 Ill. 164.

The action for money had and received for the use of the plaintiff is an equitable action and lies for money had and received by the defendant, which in equity and good conscience he should not retain, but should pay to the plaintiff. The right of recovery in such action depends upon two things: First, that the

defendant has actually received the money; and, second, that in equity and good conscience he should pay it to the plaintiff. The law in such case implies a promise to pay, although there is no privity between the parties. The alleged contract is fictitious and the right of recovery is governed by principles of equity. *Morris v. Jamieson,* 99 Ill. App. 32; *Richolson v. Moloney,* 195 Ill. 575; *Donovan v. Purtell,* 216 Ill. 629; *Highway Commissioners v. City of Bloomington,* 253 Ill. 164.

It has been frequently said by appellees in their argument that all the said funds were received by appellee, Schaefer, as treasurer, and that the other appellees, the commissioners, received no money, and, therefore, there can be no action for money had and received against them. The treasurer was appointed by the appellees, the commissioners, and he received the money for the drainage commissioners, whose officer he was, and to and for the use of the bondholders. The treasurer and the commissioners held and controlled the funds, and the bond holders could not get them except by the order of the commissioners and by payment on such orders by the treasurer, i. e., without the joint action of the commissioners and the treasurer. The commissioners had the right and the power at all times, and it was their duty to control the funds in the treasurer's hands and to direct him to pay them out for the purposes for which they were received, and the treasurer could not legally pay them out, except by such direction. By their concerted acts the commissioners and the treasurer diverted funds received for the use of appellant and paid them to others. Hence, they are jointly liable to her for the amount so by him diverted. Paragraphs 89a, 89b, 105 and 112, chapter 42, Hurd's Statutes 1911 (J. & A. ¶¶ 4490, 4491, 4507, 4514); *Lovingston v. Board of Trustees,* 99 Ill. 564-572; *City of Springfield v. Edwards,* 84 Ill. 626-633; *Law v. People,* 87 Ill. 385-399; *Barton v. Minnie Creek*

*Drain. Dist.,* 112 Ill. App. 640; *Russell v. Tate,* 52 Ark. 541; *City of Blair v. Lantry,* 21 Neb. 247.

It is suggested that the liability of appellee, Schaefer, is on his official bond, and that the other appellees may be liable in a proper action in tort. The one question we are to decide is whether or not they are jointly liable in this action, and it is not an answer thereto to determine that they are liable in other actions. Where public officers fail to perform a public duty and thereby cause an injury special and peculiar to such individual, an action will lie against them personally. *Gage v. Springer,* 211 Ill. 200. If the injury is caused by the joint action of the officers, a joint action may be maintained either in the case of a breach of contract expressed or implied, or in the violation of a duty whereby a tortious injury is inflicted. Appellees were trustees in the management and application of the funds levied and collected to pay the bonds in question and their misapplication of them was a breach of trust and a breach of their implied contract to properly apply them, and amounted to a conversion of the funds. Such misapplication or conversion could not have happened, or did not happen, otherwise than by their joint action. The statute required them to receive and pay out those funds only for the specific purposes for which they were collected in case the bonds were not registered with the State auditor, as happened in this case, as is further disclosed by paragraphs 194 and 197 of the Act of 1895, under which the bonds were issued. Chapter 42, Hurd's Rev. St. 1911, pp. 934, 935, (J. & A. ¶¶ 4572, 4575).

It was the treasurer's duty to so receive and apply said funds, although ordered by the commissioners to pay them out for other valuable services to the district. The court, therefore, properly sustained the demurrer to his special plea. *City of East St. Louis v. Flannigen,* 34 Ill. App. 596; *People v. Hummel,* 215 Ill. 71.

It is also suggested that suit should have been brought against the drainage district as it appears that

there were funds in the hands of its treasurer subject to the payment of the bonds when this suit was brought. There is no doubt that a suit may be maintained against the municipal corporation for whatever of such funds may be in its treasury. *Conway v. City of Chicago*, 237 Ill. 128; *Bradbury v. Vandalia Levee & Drainage Dist.*, 236 Ill. 36.

No such suit, however, for such funds already misapplied and not in the treasury of the district can be maintained against it. Such funds having been levied and collected for the payment of the bonds in question, no second assessment can be levied and collected to pay the same. A second assessment cannot be levied to meet a past indebtedness. The drainage district is, therefore, not liable for any part of the funds misapplied by appellees. For those funds · appellant must look solely to the officers who misappropriated them. *Ahrens v. Minnie Creek Drain. Dist.*, 170 Ill. 262; *Drainage Commissioners v. Kinney*, 233 Ill. 67; *Barton v. Minnie Creek Drain. Dist.*, 112 Ill. App. 640; *Bradbury v. Vandalia Levee & Drainage Dist.*, 236 Ill. 36.

It is finally argued by appellees that the bonds in question are absolutely void, because the meetings of the drainage commisioners to organize the district, to classify the lands, to levy the assessments and to authorize the bonds were all held outside of the boundaries of the district, and that, therefore, appellant cannot recover. This suit is not on the bonds, but is a personal action against appellees for money had and received by them to appellant's use. Appellees received the funds in question under the statute, for the sole purpose of paying the bonds in question. They cannot avoid their liability to appellant by alleging or proving the illegality of the bonds. *Ross v. Curtiss*, 31 N. Y. 606; *Morris v. State*, 47 Tex. 583; *Highway Commissioners v. City of Bloomington*, 253 Ill. 164.

There is no liability of appellees to refund or to repay to any taxpayers of the district any of the taxes or assessments voluntarily paid by them no matter how

illegal the taxes collected may have been. The evidence tends to show the taxes in question were paid voluntarily by the taxpayers, and such payments must at any rate be presumed to have been made voluntarily until the contrary is made to appear. The taxes were spent for the benefit of the district and could not have been legally refunded. It is the well established law of this State that money paid voluntarily by one with knowledge or means of knowledge of all the facts cannot be recovered. Also, that one who has voluntarily paid to the collector or to the treasurer of a municipality a void tax with full knowledge of all the facts concerning the same cannot recover such tax by set-off or otherwise. *Yates v. Royal Ins. Co.*, 200 Ill. 202; *Otis v. People*, 196 Ill. 542. See also *Elston v. City of Chicago*, 40 Ill. 514; *Falls v. City of Cairo*, 58 Ill. 403; *Swanston v. Ijams*, 63 Ill. 165, a suit to recover drainage taxes illegally assessed. *City of Chicago v. McGovern*, 226 Ill. 403; *Illinois Glass Co. v. Chicago Telephone Co.*, 234 Ill. 535.

From whatever angle the matter is viewed appellant was legally and equitably entitled to receive the funds collected by appellees that had been levied for the payment of her bonds, and it was against equity and good conscience to withhold them from her. Appellees, however, are only jointly liable to appellant for the taxes received by them for the payment of her bonds and misapplied by their joint action. They are not jointly liable for any such funds misapplied prior to June 4, 1904, or subsequent to March 10, 1906. Appellant was also entitled to recover interest at the rate of five per cent. from December 1, 1907, to which time the interest thereon had been paid by the district, and no demand by her before suit was necessary to the maintenance of her action. *Chapman v. Burt*, 77 Ill. 337; *Smyth v. Stoddard*, 203 Ill. 424; *Highway Commissioners v. City of Bloomington*, 253 Ill. 164.

The judgment is reversed and, as the entire liability of appellees is not fully disclosed by the record, the cause is remanded.          *Reversed and remanded.*